# SUPREME COURT — APPELLATE DIVISION — FOURTH DEPARTMENT.

## May 3, 1923.

## THE PEOPLE v. JOHN F. MALONE.

### (205 App. Div. 257.)

(1) GRAND LARCENY—DEFENDANT, WHILE COMMISSIONER OF CITY OF BUFFALO WAS CHARGED WITH AIDING AND ABETTING ANOTHER IN OBTAINING MONEY FROM CITY BY MEANS OF FALSE BILL AND VOUCHER—EVIDENCE OF SIMILAR TRANSACTIONS ADMISSIBLE TO SHOW CRIMINAL INTENT.

On a prosecution for grand larceny against a former commissioner of the city of Buffalo, who was charged with aiding and abetting a merchant of the city in obtaining from the city a sum of money by means of a false bill and voucher, which was audited and approved by the defendant with criminal intent knowing that it was false and that the goods charged had not been delivered, evidence is admissible that the defendant had, on other occasions, made an agreement with the same person to pay, out of city funds upon a false bill and voucher, for articles furnished to the defendant personally; that the defendant agreed to accept a bribe from the same person for obtaining a stall at the public market and that the defendant had obtained coal for his own home and gasoline and oil for his automobile, by means of false bills and vouchers. The evidence is admissible to prove guilty knowledge or intent and to show that the transaction charged in the indictment took place in accordance with a general scheme or plan to cheat or defraud.

(2) SAME—CHARGE AS TO EVIDENCE OF OTHER OFFENSES NOT ERRONEOUS.

The charge by the trial judge in reference to the use of evidence of other offenses was not misleading though there were some statements which taken alone were not correct.

(3) SAME—ACCOMPLICES WERE SUFFICIENTLY CORROBORATED UNDER CODE OF CRIMINAL PROCEDURE, § 399.

The accomplices, who were the man who presented the false bill and an employee of the city, were sufficiently corroborated under section 399 of the Code of Criminal Procedure which requires corroboration by other evidence tending to connect the defendant with the commission of the crime, since it was shown that the articles for which the false bill and voucher was made were footballs that were purported to have been

purchased at about the close of the season and that none of them were ever delivered to the storekeeper nor received by any of the playground instructors; that the defendant took over the auditing of accounts from a person in his department; that the person from whom the footballs were purchased received all the patronage of the department for athletic goods; that the person from whom the oil and gasoline were purchased received the patronage for that material; and that the defendant advised one of the accomplices to "sit tight."

(4) SAME—CRIME CHARGED WAS PROVEN THOUGH ACCOMPLICE DID NOT RECEIVE CASH OR WARRANT WHICH WAS CREDITED TO HIS ACCOUNT BY BANK.

The fact that the accomplice who received the warrant on the false bill and voucher did not receive cash thereon from the bank as charged but received credit to his account, does not constitute any variance between the crime charged in the indictment and the proof.

(5) SAME—CHARGE THAT JURY MUST DETERMINE CASE "SO FAR AS THEY CAN" WITHOUT PREJUDICE OR INFERENCE FOUNDED ON FAILURE OF DEFENDANT TO TESTIFY NOT ERRONEOUS.

The charge of the court in reference to the failure of the defendant to testify, in which, after reading section 393 of the Code of Criminal Procedure, it was stated that the courts have held that the jury must "so far as they can" determine the case without prejudice or inference against the defendant founded upon his failure to testify, was not prejudicial to the defendant's substantial rights because of the words quoted.

(6) SAME—CONDUCT OF TRIAL JUDGE AND DISTRICT ATTORNEY NOT PREJUDICIAL.

There is no merit in the contention that the defendant was denied a fair trial by reason of the improper conduct of the district attorney and the prejudicial comments of the court, for the evidence of the defendant's guilt is clear and, furthermore, whatever criticism there may be of the district attorney and of the court, the record shows that their conduct was brought about by the heckling and annoying conduct of the attorney for the defendant.

(7) SAME—CODE OF CRIMINAL PROCEDURE, § 542, APPLIED.

Although there were some errors committed in the receipt of evidence, the Appellate Division will, under section 542 of the Code of Criminal Procedure, affirm the conviction, in view of the fact that the defendant's guilt was clearly established by the People and that he interposed no defense.

APPEAL by the defendant, John F. Malone, from a judgment of the County Court of the county of Erie, rendered against

him on the 3d day of November, 1922, convicting him of the crime of grand larceny, first degree.

Marvin M. Marcus (John W. Ryan and Helen Z. M. Rodgers of counsel), for the appellant.

Guy B. Moore, District Attorney (Walter F. Hofheins, Assistant District Attorney, of counsel), for the respondent.

HUBBS, P. J.:

The defendant is a man about sixty-five years of age. He has been prominent in the civic affairs of the city of Buffalo for many years and at one time served as State Senator. He became one of the five commissioners governing the city of Buffalo under the Commission Charter. He held office from January, 1916, to December 31, 1921. He was first elected in 1915 for a two-year term and was re-elected in 1917 for a four-year term. In the fall of 1921 he was defeated for re-election.

As commissioner he was head of the department of parks and public buildings, which included the bureau of recreation. Albert C. Febrey was an employee of the park department and for eight years had been director of recreation. It was the duty of Febrey to sign receipts for all goods delivered for recreational purposes.

The specific charge against the defendant, contained in the indictment, is that he counseled, aided and abetted Edmund W. Rose in obtaining from the city the sum of $670.32 by means of a false bill and voucher. The bill covered forty-eight foot-balls and other athletic goods. It is charged that in 1921, shortly before the defendant's term of office expired, he, intentionally and in pursuance of an agreement with Rose, audited and approved the voucher with criminal intent, knowing that it was false. It was the defendant's duty, as commissioner, to sign all vouchers which were approved by him, and they could not be paid until approved and signed by him.

Rose was a man thirty-four years of age and ran a small athletic goods store. He was an accomplice of the defendant and it was so held by the trial court. Febrey was also held to be an accomplice.

The principal facts of the charge were testified to by the two accomplices, Rose and Febrey. Briefly, the testimony of Rose was that just before the election of 1921, at which the defendant was a candidate for re-election, he was called to the defendant's office and told by the defendant that he was pressed for money for election expenses. The defendant reminded him that thousands of dollars in business had been diverted to his store through the defendant's influence. Rose told the defendant that he had contributed $500 for the campaign fund. The defendant said that was not enough; that he knew of a man in the same business in New York, and that if Rose was not willing to furnish him with money and put through false vouchers for it he would lose the business with the city. Rose testified that he went to the bank, secured $500 and gave it to the defendant, and that thereafter he secured the further sum of $500 at the bank and gave it to the defendant; that it was stated and agreed between them that false vouchers should be put through by Rose to cover the amount; that he afterward prepared the voucher referred to in the indictment, received a warrant for the same and deposited it in the Market Bank to his own account; that the goods specified on the bill to which the voucher was attached were never delivered to the city. There was also evidence that the voucher did not have attached thereto a white slip containing an order for the goods, as was required under the practice of the department, and that the voucher was signed and approved by the defendant before a receipt for the goods had been signed by Febrey. Febrey testified to facts corroborating the story told by Rose. The voucher and the checks given by Rose upon which the money, which he testified he delivered to the defendant, was drawn from the bank, were received in evidence.

The district attorney's theory of the trial was that, while Rose and Febrey were accomplices, there was sufficient corroborating evidence to make a question of fact for the jury, and that he had a legal right, upon the trial, to introduce evidence of other transactions in which the defendant participated which tended to show his criminal intent and guilty purpose, particularly as upon this trial it could be urged with a great deal of force that the defendant might have signed the voucher in question without giving it the careful attention which it deserved but still without criminal intent. He sought to show the criminal purpose and intent of the defendant by testimony that on other occasions he had made agreements with Rose to pay for certain articles of personal property purchased by him and by his son, such as clothing, etc., and that Rose was to reimburse himself by putting through false vouchers which were to be approved and allowed by the defendant, and which were so approved and allowed and paid to Rose, also by testimony to the effect that the defendant agreed to accept a bribe from Rose, or a company in which he was interested, for obtaining a stall at the public market, also by testimony that the defendant had coal drawn to his own home and caused the coal dealer to collect the amount due for it from the city by putting through false vouchers which were approved by the defendant, and also by testimony that the same practice was adopted by agreement with the dealer from whom his department purchased oil and gasoline.

It is urged by the defendant that this evidence was incompetent and improper and was used for the purpose of convicting the defendant of the crime charged in the indictment by proof that he had committed other crimes disconnected from the one charged. The counsel for the appellant bases his argument upon the general statement of the rule contained in Coleman v. People (55 N..Y. 81, 90). In that case it was said: " It would be easier to believe a person guilty of one crime if

it was known that he had committed another of a similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It would lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one." The line of cases cited by the appellant upon this question are all based upon the general principle contained in the above quotation. There is no question about the principle. It is so elementary that no further citation of authority for it is necessary.

It is equally true, however, that there is an exception or limitation to such principle which is as firmly established as is the principle itself. That is, in cases where it is necessary to prove guilty knowledge or intent, evidence is admissible to establish similar acts reasonably connected in time and character for the purpose of proving that the transaction charged in the indictment took place in accordance with a general scheme or plan to cheat or defraud. (People v. Shulman, 80 N. Y. 373, n.; People v. Hudson Valley Construction Co., 217 id. 172.) There are many cases of this character, but the two cases cited fairly illustrate and state the rule. In the case of People v. Duffy (212 N. Y. 57), a police official in New York city was indicted for bribery for accepting money from a person named on a stated date. Upon the trial evidence was offered that on other occasions he had accepted money from other persons for the same purpose. The same argument was made in that case as was made by the learned counsel for the appellant in this case, but it was held by the Court of Appeals that the evidence was competent within the limitation of the general rule that you cannot convict a person of one crime by showing that he has been guilty of another. In my judgment, the evidence regarding the various transactions in question was competent. (See Columbia Law Review, March, 1923, vol. 23, No. 3, p. 306.)

I think the exception to the charge in regard to evidence of other offenses is not well founded.    The trial judge, in an attempt to justify his rulings, read, during his charge, from several Court of Appeals opinions, and during the discussions with the counsel for the defendant undoubtedly made some statements which standing alone were not correct.    It clearly appeared throughout the trial, however, and throughout the charge taken as a whole, that the evidence of other offenses was received for the purpose of showing guilty knowledge and criminal intent.    It seems to me that the jury could not have been misled upon that proposition by anything that the court said in its charge.

It is urged, with great force and ability, by the counsel for the appellant that " The court erred in 'denying defendant's motion to dismiss the indictment for lack of corroboration of the testimony of the accomplice Rose, and in declining to charge that the testimony of Rose was not corroborated by such other evidence as tends to connect the defendant with the commission of the crime charged in the indictment." Section 399 of the Code of Criminal Procedure provides : " A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." Under the provisions of that statute the testimony of two accomplices must be corroborated to the same extent as that of one.    One accomplice cannot corroborate the testimony of the other. (People v. O'Farrell, 175 N. Y. 323.)    There can be no question about the law upon this proposition.    The corroborative evidence need not show the commission of the crime or that the defendant was connected with the commission of the crime. It is sufficient if such evidence tends to connect the defendant with the commission of the crime.    (People v. Dixon, 231 N. Y. 111, 116.)

Rose and Febrey were both accomplices and they gave the principal testimony as to the crime charged in the indictment.

The question, therefore, is whether or not their testimony was corroborated by evidence which tended to connect the defendant with the commission of the crime charged. Briefly, the evidence relied upon by the learned district attorney to constitute corroboration is the testimony as to the number of footballs for which the bill was presented, the time of year, the fact that the recreation grounds were about to be closed, that the football season was about over and that on the same day the defendant approved another voucher presented by Rose for thirty-six footballs which were not delivered. It is also urged that the fact that Seitz testified that he, as storekeeper, received no footballs covered by said vouchers and that none of the playground instructors received any footballs subsequent to the date on the two vouchers tends to corroborate Rose and Febrey. It is urged further that the fact the defendant had taken over from Hull the auditing of accounts, that he was himself acting as auditor and, therefore, was required to know about the items of all bills, tends to corroborate the accomplices. The district attorney contends that the fact that the defendant certified to the particular voucher at that time and under all those circumstances is evidence which tends to connect the defendant with the commission of the crime and furnishes the necessary corroboration of the testimony of Rose and Febrey.

It is also urged that the fact that Rose was getting all of the patronage of the department for athletic goods and Suor the patronage for oil and gasoline, and the large increase in their business resulting therefrom, was some evidence tending to corroborate the accomplices; that the fact that the bills for athletic supplies and for oil and gasoline were so large as to be unreasonable was, or ought to have been, notice to the defendant, if he were honest, that something was wrong; that the evidence of Phillip Febrey, a grocer, who was not an accomplice, and who testified that the defendant told him over the telephone and at defendant's house to tell his brother, Albert Febrey, the accomplice, to " sit tight " and to employ the attor-

ney who was acting for Rose, constituted some corroboration. The opinion of Mr. Justice KRUSE in People v. Lein (152 App. Div. 381; affd., 207 N. Y. 667) indicates that the advice to tell him to " sit tight " constitutes corroborating evidence.

The voucher was approved and signed by the defendant and was received in evidence. There was evidence not given through the testimony of the accomplices that the forty-eight footballs charged for on the voucher had never been delivered. The voucher, therefore, was a false voucher, signed and approved by the defendant without intent to commit a crime. It appears, however, by the testimony of witnesses who were not accomplices that the defendant on other occasions, in pursuance to agreements, had approved other false and fraudulent vouchers, and had benefited financially by so doing. It seems to me that there was evidence which tended to connect the defendant with the commission of the crime in addition to the evidence given by the accomplices, and that the trial court did not err in so holding.

It is contended by the defendant that there was a fatal variance between the crime charged in the indictment and the proof. The indictment charged the defendant with common-law larceny. The proof was that the city delivered to Rose a warrant upon which he received credit to his account at the bank, and that the city did not deliver to him any money. It is urged that the act charged was not proved and the act proved was not charged. That question has been settled contrary to the contention of the appellant by the Court of Appeals. (People v. Lein, 152 App. Div. 376; affd., 207 N. Y. 667; People v. Neff, 191 id. 210.)

During his charge the trial judge read to the jury section 393 of the Code of Criminal Procedure, which provides that the failure of the defendant to testify does not create any presumption against him. In his discussion of that section the trial judge said: " Now the courts have held that the practical meaning of this is that the court and jury must, so far as they

can, determine the case without prejudice or inference against him, founded upon omission to testify." It is urged that the use of the words " so far as they can " requires reversal. I do not think the language used, taken in connection with all the rest of the charge, affected the substantial rights of the defendant. The court had read the section referred to and the jury could not have been influenced by the language excepted to.

The counsel for the defendant makes the point that the judgment should be reversed because the defendant did not have a fair trial by reason of the improper conduct of the district attorney and the prejudicial comments of the court. Courts have gone far in reversing in criminal cases for improper conduct where there was doubt in regard to the merits of a case, and where close questions of fact were involved. However, a reversal is not required in every case where the evidence of the defendant's guilt is clear and convincing, even though error may have been committed during the trial. The record in this case discloses a studied and persistent attempt by the counsel for the defendant to heckle and annoy the trial judge and the district attorney for the purpose of getting into the record exceptions to statements which they might make, which could be used upon appeal as a ground for reversal. Such conduct by an attorney for a defendant cannot be commended and where it finally results in drawing from the district attorney or from the trial judge some statement which, standing alone, might seem to constitute error, the judgment should not be reversed unless it appears that such error was prejudicial to the rights of the defendant. This court has not hesitated to reverse in cases where it appeared that the conduct of the district attorney had been prejudicial to the rights of a defendant. This is not such a case. In fact, the patience and forbearance of the district attorney upon the trial of this case, under great provocation, is worthy of commendation.

It is true, undoubtedly, that upon the trial there were errors made by the receipt of evidence which, at the time when it was

offered, was not competent, but the general purpose of the evidence was competent, and I think there were no errors in rulings made which were of sufficient importance to require a reversal.

An appellate court is not required to search the record to ascertain whether some technical rule of law has been violated and, if such a violation is found, to reverse the judgment, especially in a case like this where the evidence of the defendant's guilt is convincing. The defendant did not deem it advisable to call witnesses to meet the People's case, and it is difficult to see how the jury could have reached any conclusion different from that which it did reach. It is provided by section 542 of the Code of Criminal Procedure that " After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." Within the clear command of that statute the judgment of conviction should be affirmed.

All concur.

Judgment of conviction affirmed.