THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH LOVELLO, Appellant.

First Department, February 14, 1956.

*Peter L. F. Sabbatino* of counsel (*Thomas J. Todarelli* and *Edward J. Fontana* with him on the brief; *Sabbatino & Todarelli,* attorneys), for appellant.

*Charles W. Manning* of counsel (*Sidney M. Fruhling* and *Stephen A. Wise* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

FRANK, J. After a lengthy trial, defendant was convicted of criminally receiving stolen property and criminally concealing and withholding stolen property. We are of the opinion that the guilt of defendant was clearly and substantially established and there was ample proof, independent of defendant's confession, to sustain the verdict.

The testimony established that one Joseph Ireland, a jewel thief, filched a valuable diamond brooch from a midtown jewelry shop. The thief, who knew defendant for about two years, met Lovello that evening and delivered the stolen property to him. The next night defendant paid Ireland for it. About a month later Ireland stole ten pieces of jewelry valued at about $32,000 from a display case in the Waldorf-Astoria Hotel. The same night Ireland again met defendant who examined the jewelry and told Ireland he had " made a good score " and commented, " it looks nice, the stuff is nice ". Lovello then took the gems and departed.

A few days later Ireland was taken to the District Attorney's office where he confessed the larcenies and named defendant as the receiver. Thereafter Ireland accompanied the police in a search for Lovello.

When apprehended at about midnight on September 22, 1951, Lovello said, '' What's everybody getting excited for? We can talk this thing over.'' He was told, '' There will be no talking, Joe. All we want is the jewelry back.'' Defendant replied, '' I might be able to get the green stuff back but I can't get the white stuff.'' The reference to color distinguished emeralds from diamonds. After this conversation on a public street at the corner of 26th Street and Second Avenue, defendant was taken to the detective squad office, questioned for a time, escorted to his apartment and thereafter to another house all in a futile search for the stolen jewels. Defendant was returned to the station house at about 6:15 A.M.

Although defendant was never in the jewelry business, a jeweler's loupe was found in his home. Lovello's only explanation was that it did not belong to him. When taken into custody, he had the cards of a Bowery jewelry firm in his pocket, on one of which in his handwriting was the notation, '' Joe, $6,000.''

A completely disinterested witness, the owner of a candy store, identified Ireland and Lovello as having frequented his place of business together.

Ireland's disreputable character and background were fully explored on the trial. He was subjected to a searching and vigorous cross-examination which filled some seventy pages of the record. His credibility was for the jury. It chose to believe him and there was ample evidence to justify that conclusion.

Taken into custody about midnight on Saturday, defendant was not arraigned until Monday morning. The record indicates that from the time he was apprehended, the police made diligent efforts to recover the jewelry and to ascertain the person or persons to whom the stolen property had been delivered by Lovello. Defendant gave the detectives misleading information with respect to the location of the stolen property, time and again. Hours were wasted in pursuing these worthless leads.

The proof established that up to Sunday morning the detectives had spent four days in their efforts to solve the crime and apprehend the perpetrators, and at the end had been on duty for twenty-four hours without relief. Instead of arraigning defendant, they disbanded at 8:00 A.M. for a few hours of rest. Defendant encouraged the hopes of the police that the jewelry could be recovered. It may well be that the officers believed that a few

hours of solitude for defendant might result in disclosures revealing the location of the loot. It must be emphasized that the proof established that defendant made confessions on two different occasions. The first was on the street immediately upon being taken into custody. The second was when he was being interrogated in the station house. Obviously the delay in arraignment had no bearing on the first confession. Moreover, there was no proof, either direct or inferential, that the delay in arraignment resulted in the station house confession. The evidence with respect to the efforts to recover the jewelry and the need for rest by all of the participants in the investigation presented a question of fact as to whether the delay was proper or not. In any event, the court properly submitted the question of delay in arraignment for the jury's consideration. Implicit in the verdict is the finding that delay under the circumstances in this case was neither unreasonable nor unnecessary.

Defendant urged on the trial that he was beaten by the police and on this appeal it is argued that his confession was induced by force and fear. *Never, however, neither before nor at the trial, did he assert that the confession made by him on the street when apprehended was the result of an assault upon him.*

On the trial Lovello denied having these conversations. The denials presented a clear question of fact for the jury's consideration.

Defendant testified that he was beaten shortly after he arrived in the station house. It was then that he made the second series of statements. Strangely enough, his direct examination was so brief in contrast to the rest of the record that it is contained in six pages. In response to a question, Lovello denied making a statement before entering the station house. He was then interrogated fully about the alleged beating — but never once was he asked by his counsel whether he made a statement or a confession as a result thereof. On cross-examination defendant either denied making the statements constituting the station house confession or said he did not remember.

Under oath, Lovello gave so lurid a description of the beatings that it is difficult to understand why he did not require hospitalization. Yet, by his own testimony, he had been in and out of the station house on two occasions, visited his home and stopped at a restaurant with the detectives for a meal. He claimed that a detective had stamped on his chest repeatedly, that he had been kicked on the legs, thighs and buttocks. He asserted that he had been struck on the head many times with a wire basket and a tight bundle of newspapers or magazines until he bled profusely

from the head. He admitted, however, that he never complained to the District Attorney on Sunday, or to the Magistrate on Monday, when he was arraigned and had counsel present. Before arraignment, he was taken to police headquarters and there photographed and presumably placed in the line-up. The photographs taken at police headquarters were received in evidence. After arraignment, he was taken to the City Prison and there examined by the admitting physician who was called as a defense witness. Dr. Pelligrini testified that the only mark found on defendant was a bruise in the region of the left hip. Defendant was released on bail on September 25th. Members of his family testified that that evening they examined his body and observed numerous bruises. Photographs taken on September 26th showing these abrasions were received in evidence. Another witness testified to her observation of bruised areas on September 27th.

The prosecution contended that these injuries were inflicted either by Lovello himself, or others at his behest after his release on bail to provide a defense to the charge.

In view of defendant's virtual denial of admissions or confessions, it is somewhat difficult to see why the course of the trial was sidetracked by the welter of evidence relating to police brutality. Its admission, however, could scarcely be considered prejudicial to defendant. The court fully submitted both the proof of delay in arraignment, and force and duress as questions of fact bearing upon the voluntary nature of the confessions, and properly charged the jury with respect thereto. The verdict determined the factual dispute thus raised.

In his summation the assistant district attorney referred improperly to a conversation he had had with defendant. The exact words used are fully set forth in the dissenting opinion.

Regardless of provocation by defense counsel, as here, the prosecutor by virtue of his office and his duty is obligated to ensure a fair trial to a defendant, without passion and over-emotional emphasis. We reiterate the instructions of the Court of Appeals that, " Even in cases of clearest guilt * * * it is the duty of the district attorney to refrain from over-zealous advocacy " (People v. Slover, 232 N. Y. 264, 267).

The trial court did not correct the error when called upon to do so by an appropriate objection. It should have sustained the objection and instructed the jury to disregard the statement.

Can we assume that the error of the prosecutor and the failure of the court to correct it brought about the conviction of

defendant, and that without these mistakes the result would have been different? We think not. The Court of Appeals has said, " We are not, in order to accord the defendant his full rights, obliged to make the assumption that the jury box was filled with men totally devoid of reasoning power and solely lacking in common sense " (*People* v. *Wagner*, 245 N. Y. 143, 151).

Were the guilt of defendant not so clearly established, a reversal of the conviction might be proper, but we feel that under all the circumstances the error did not affect the substantial rights of defendant (Code Crim. Pro., § 542; *People* v. *Vogelgesang*, 221 N. Y. 290; *People* v. *Malone*, 205 App. Div. 257).

The conviction of defendant should be affirmed.

PECK, P. J. (dissenting). Defendant has been convicted on sufficient evidence of criminally buying and receiving stolen property and criminally concealing and withholding stolen property.

I feel constrained to dissent from an affirmance of the conviction, not because of any disagreement with the verdict, but because of what I conceive to be an error in the charge and because of a highly improper and prejudicial statement made by the District Attorney in his summation, which was condoned rather than corrected by the trial court when proper objection was made.

Defendant was taken into custody on a Saturday at about midnight. He was not arraigned until Monday morning. In the meantime, he allegedly made statements to the District Attorney and to the detectives which amounted to a confession. No written statement was taken by the District Attorney, although he had a stenographer present, but the confession was introduced into evidence through the testimony of the detectives.

Defendant claimed that the alleged confession had been extracted from him by police beatings. The court properly charged the jury with respect to the possible invalidity of the confession because of the manner in which it might have been obtained. The court refused to charge, as requested, that the police officers had been guilty of unnecessary delay in arraigning the defendant. It did charge the jury as to the legal requirement of a prompt arraignment and left it for them to determine whether there was any unnecessary or unreasonable delay. The court then properly charged that the jury might consider any unnecessary or unreasonable delay as a circumstance in determining whether the alleged confession was voluntary.

The only suggested explanation for the delay is that the detectives, with some semblance of co-operation from the defendant, were attempting to recover the stolen goods. It quite clearly appears, however, that the real reason for the delay was to give the detectives a rest after an all-night questioning of the defendant and to hold the defendant for further questioning at the convenience of the District Attorney. The detectives retired at eight o'clock Sunday morning and returned with the District Attorney to resume the questioning at three o'clock on Sunday afternoon. A part of the alleged confession was obtained in the subsequent questioning.

In my view the delay in arraignment was unnecessary and the jury should have been so advised by the court. The defendant could and should have been arraigned on Sunday morning. The District Attorney, with commendable frankness, virtually concedes in his brief on appeal that the requested charge should have been given, citing *People* v. *Snyder* (297 N. Y. 81, 92). He argues, however, that defendant was not prejudiced by reason of the failure of the court to so charge, because the alleged beatings of which defendant complains were all administered prior to six o'clock in the morning, so there could be no connection between the delay and alleged police abuse coercing the confession.

The significance and possible prejudice in the delay cannot be so confidently dismissed. While it is true that an alleged confession had been obtained prior to six o'clock in the morning, still that part of the confession which was obtained on Sunday afternoon, in response to the District Attorney's questioning, was featured and emphasized in the cross-examination of the defendant by the District Attorney and in the District Attorney's summation. Indeed, it is the handling of this part of the confession in the summation which constitutes the prejudicial impropriety warranting a new trial.

The confession given to the District Attorney was testified to by detective Omark. Neither the District Attorney nor his stenographer took the stand. Nevertheless, in his cross-examination of the defendant, the District Attorney, eliciting only denials or denials of recalling, harped upon the alleged statements of confession made to him when he questioned the defendant at the station house. Objection was made to this form of cross-examination. Such cross-examination was of questionable propriety under the circumstances, but was only a forerunner of what was to take place in summation.

In summation the District Attorney strove to give all possible weight to the confession made to him, and made the credibility of the testimony with respect to that confession a determining point of the case.

These were his words in summation: " Gentlemen, with all the sincerity at my command, I say to you that if that conversation did not take place, in your judgment, you stop right there. Don't waste another ten seconds on this case. Come back and say that this defendant is not guilty. If that conversation did not take place, then I am an aider and abetter to Omark's perjury."

Counsel for the defendant objected, saying " I don't think he can support Omark's testimony by his own unsworn argument. He is not on the stand."

The court made the following statement and ruling: " The purpose of summation is to discuss the evidence presented in the case and to draw such natural and logical inferences as can properly be drawn. Objection overruled." An exception was taken.

Throwing the prestige of his own person and position into the balance was a weighted foul blow by the District Attorney. He pitted against the defendant not only the credibility of the sworn statement of detective Omark but also his own unsworn vouching for the credibility of that testimony and challenged the jury to disbelieve it at the pain of branding him an aider and abetter of perjury.

Had the court administered the proper reprimand and sustained defense counsel's objection, the unfortunate implication in the incident and any serious consequence might have been corrected and avoided. But instead, the court overruled the objection and by his accompanying comment gave standing to the statement of the District Attorney as legitimate argument.

I would not vote for a reversal in this case merely because of the court's error, if it be such, in refusing to charge the jury as a matter of law that there was unnecessary delay in the arraignment of defendant, although it may be noted that some of the District Attorney's most prized evidence was secured following that delay and it was that very evidence which was so turned to the disadvantage of the defendant in the objectionable part of the District Attorney's summation. In my view, however, the verdict, though justified on the weight of evidence, should not be allowed to stand where such grave error as here occurred on summation was committed by counsel and compounded by the court.

It is more important to the administration of justice that the conduct of trials be free from prejudicial impropriety and that District Attorneys remain within the bounds of legitimate advocacy than it is to hold the conviction of a guilty defendant and avoid the burden of a new trial.

I vote to reverse the judgment and order a new trial.

BREITEL and BOTEIN, JJ., concur with FRANK, J.; PECK, P. J., dissents and votes to reverse and order a new trial in opinion in which BERGAN, J., concurs.

Judgment affirmed.