THE PEOPLE OF THE STATE OF NEW YORK, Respondent *v.* SAVVA
SAVVIDES, Appellant.

First Department, March 13, 1956.

*Peter L. F. Sabbatino* of counsel (*Thomas J. Todarelli* and *Edward J. Fontana* with him on the brief; *Sabbatino & Todarelli,* attorneys), for appellant.

*Sidney M. Fruhling* of counsel (*Charles W. Manning* with him on the brief; *Frank S. Hogan, District Attorney, New York County,* attorney), for respondent.

RABIN, J. Defendant appeals from a judgment convicting him of the crime of feloniously possessing narcotics (Penal Law, § 1751). We are satisfied that he is guilty beyond question. However, it is urged that there must be a reversal and a new trial because a witness had previously been promised leniency by the District Attorney in return for his co-operation in prosecuting the defendant, and that fact was not disclosed by either the District Attorney or the witness.

Before defendant's arrest, this witness, Mantzinos, was apprehended, implicated the defendant, and pleaded guilty to a violation of section 1751. At the time of his plea, the assistant district attorney stated in open court his " understanding that [upon] continued, truthful co-operation on the part of the defendant I will permit the withdrawal of that plea and permit the defendant to plead to an attempt under that first count, which brings with it no mandatory minimum ". After defendant's conviction, Mantzinos was permitted to withdraw his original plea and enter a plea of guilt to the lesser charge, the prosecutor stating: " I am certain that his testimony in fact was the ultimate factor in convicting [appellant]  *  *  *  who was found guilty of the charge." Mantzinos was sentenced for a term of one to two years, with execution thereof suspended.

At his trial, defendant was apparently unaware of Mantzinos' promise of leniency for " truthful co-operation." This circumstance is said by appellant to lend impact to the following direct examination of Mantzinos by the same prosecutor previously quoted:

" Q. Were you convicted of or did you plead guilty to the crime of feloniously posessing a narcotic drug with intent to sell? A. I pleaded guilty.

" Q. And was that in this court of General Sessions? A. Yes, it was — I can't remember well; I think it was here.

" Q. To what did that plea apply? What did that plea involve, Mr. Mantzinos? A. Possession of narcotics that I received to sell.  *  *  *

" Q. Do you recall the date on which you pleaded guilty to the crime of possession of this Hashish? A. I pleaded guilty a week before that.  *  *  *

" Q. And the crime you pleaded guilty to was the possession of these 16 pieces of hashish, is that right? A. That's right." Although the direct testimony correctly stated the fact of Mantzinos' plea, neither the District Attorney nor witness, by query or reply or otherwise, told of the " understanding " conditioned upon " truthful co-operation ".

On cross-examination, however, the picture was brought into somewhat better focus:

"Q. Do you expect any consideration in the way of fixing your punishment depending on the testimony and kind of testimony that you are giving here today? A. No.

" The Court: You really do, of course, don't you?

" The Witness: Pardon me?

" The Court: I mean you look forward with some degree of lively anticipation?

" The Witness: Well —

"Q. Is the answer 'Yes', that you do?

"A. Well, *I don't do it particularly for that cause.*

"The Court: Do you look forward to it?

"The Witness: No, I didn't. *I didn't do it for that purpose.*

"Q. Do you hope now to have any consideration in view of the testimony — A. I have already pleaded guilty to the indictment. What else can I do?

"By the Court:

"Q. The question is very simple. The question is do you look forward with some degree of optimism to the sentence to be imposed on you? A. Well, I don't know how to answer that. I never looked forward, you know — well, I pleaded guilty, that is all there is. Whatever the sentence is, let it come.

"By Mr. McNamara:

"Q. You don't care what the sentence is? A. I don't care what the sentence is.

"Q. You expect to be deported anyway, don't you? A. Well, I suppose they will deport me. I don't belong here to this country." (Italics supplied.)

It is clear from the foregoing that the jurors were never told of the fact that Mantzinos, when he pleaded guilty to the crime of possessing narcotics, had been promised by the District Attorney that if he co-operated he would later be permitted to plead to a lesser crime with a lesser sentence. We are thus required to determine on this appeal whether these circumstances are sufficient to require a reversal of the judgment of conviction.

Ordinarily in a case that is free from doubt upon the merits, the appellate courts will disregard errors of the trial court, even in a criminal case, where it is reasonably certain that such errors could not have affected the result (*People* v. *Fielding,* 158 N. Y. 542, 550). Defendant's guilt was established beyond a doubt. Apart from the other testimony in the case he had made a full confession, the truth and accuracy of which could not be challenged. Nevertheless, no matter how strong the evidence against a defendant may be, if it is shown that he did not have a fair trial a judgment of conviction will not be permitted to stand (*People* v. *Carborano,* 301 N. Y. 39; *People* v. *Tassiello,* 300 N. Y. 425; *People* v. *Mleczko,* 298 N. Y. 153; *People* v. *Manganaro,* 218 N. Y. 9; *People* v. *Minkowitz,* 220 N. Y. 399; *People* v. *Wolf,* 183 N. Y. 464).

Essentially, the only question we must decide here is whether the defendant in this case has had a fair trial. The only argument to support the claim that the trial was not a fair one is based, as we have indicated, on the failure of the District

Attorney to disclose the agreement made with Mantzinos for leniency. The withholding of that information did not bear directly on any ultimate issue of fact to be decided by the jury. The only prejudice that could be claimed by the defendant would be that the jurors were prevented from properly assessing the credibility of Mantzinos. We do not underestimate the great importance of the question of Mantzinos' credibility. We think, however, that it must have been clear to the jury from the nature of Mantzinos' own testimony (quoted elsewhere herein), that he was expecting consideration. Also that fact was made quite plain to the jury by the Trial Judge in his charge, when in commenting on the testimony of Mantzinos he said: " Only you can determine his credibility. Only you can decide what weight must be given to his testimony, but it is only fair to observe, I think, that Mantzinos was not only an accomplice but he was also a convicted criminal and I have no doubt whatever that he looked forward with the most lively anticipation to some reward for his testimony."

A fair reading of Mantzinos' testimony considered in the light of the court's charge would indicate, we think, that the jurors had a good picture of the situation insofar as the question of expectant leniency was concerned. Had the District Attorney — as he should have done — made it known that there had been a promise of leniency to Mantzinos, the only effect would have been to emphasize the fact that he had an interest in testifying, for even without that disclosure it seems obvious from this record that the jurors knew that Mantzinos had such an interest.

Unquestionably, it was the District Attorney's duty to disclose the agreement. But the question we are concerned with here is not whether the District Attorney, in failing to make the disclosure, was unfair, but whether the trial itself was unfair. In determining what constitutes a fair trial there is no fixed norm, the answer depending entirely upon the particular facts of each case. " The decision in each case as to whether the trial was fair or unfair, whether the error was harmless or prejudicial, must of necessity depend upon the nature of the proof adduced and upon the type of error committed." (*People v. Carborano*, 301 N. Y. 39, 43, *supra*.)

We fail to find on the particular facts of the present case that there is any reasonable basis for finding that the defendant did not have a fair trial.

We are mindful of the numerous cases in which convictions have been set aside because of improper conduct on the part of the prosecutor. Factually however, the present case is clearly distinguishable. The information withheld did not go directly

to any ultimate question of fact to be determined by the jury. The most a disclosure of that information would have accomplished, as we have pointed out before, would have been to emphasize something that must have already been known to the jury, namely that the testimony of the witness was coupled with an interest.

We reach the conclusion therefore that the defendant was not prejudiced and that he had a fair trial, particularly in view of the court's caveat to the jury with respect to their consideration of Mantzinos' testimony.

The judgment of conviction should be affirmed.

BREITEL, J. P. (dissenting). Defendant was convicted, after trial, for felonious possession of a narcotic drug, and was sentenced to State Prison for three to six years.* The conviction should be reversed and a new trial granted, on the ground the trial was not fair, despite the fact that the evidence amply supports the finding of guilt.

The unfairness in the trial arose from false and misleading testimony given by the accomplice witness with respect to whether he had received promises of consideration in his own criminal case for co-operating with the prosecution. The true facts were known to the trial prosecutor, for indeed, he was a participant in the making of the promises.

The defendant, Savvides, and the accomplice witness, Mantzinos, according to the substantial proof, for purposes of sale, handled ten pounds of marijuana, or hashish, the narcotic drug involved in this case.

Mantzinos was first arrested and made extended confession. Savvides, the present defendant, was promptly taken into custody and, concededly, gave a stenographically recorded confession, free from any infirmity.

The prosecution proof on the trial consisted of Mantzinos' accomplice testimony, the physical evidence, the surveillance by police officers of Mantzinos in possession of the narcotics, and the complete confession of Savvides. The defense consisted of an unlikely story by Savvides, an even more unlikely explanation for the contradictory confession, conceded to be given freely and voluntarily, and a reputation witness.

The shocking incident of unfairness arose from the following: On direct examination, Mantzinos was asked whether he had pleaded guilty to the felony of possession of narcotics with

---

* In connection with this case defendant has been in custody since March 10, 1954. For various reasons the appeal was not prosecuted by defendant until the February, 1956, Term.

intent to sell — the crime for which Savvides was being tried. He answered affirmatively.* This, undoubtedly for emphasis, was repeated at the close of his direct examination. On cross-examination, he was again asked about his plea. He repeated his affirmation. He was then asked the following questions and answered as follows:

" Q. Do you expect any consideration in the way of fixing your punishment depending on the testimony and kind of testimony that you are giving here today? A. No.

" The Court: You really do, of course, don't you?

" The Witness: Pardon me?

" The Court: I mean you look forward with some degree of lively anticipation?

" The Witness: Well —

" Q. Is the answer ' Yes ', that you do? A. Well, I don't do it particularly for that cause.

" The Court: Do you look forward to it?

" The Witness: No, I didn't. I didn't do it for that purpose.

" Q. Do you hope now to have any consideration in view of the testimony — A. I have already pleaded guilty to the indictment. What else can I do?

" By the Court:

" Q. The question is very simple. The question is do you look forward with some degree of optimism to the sentence to be imposed on you? A. Well, I don't know how to answer that. I never looked forward, you know — well, I pleaded guilty, that is all there is. Whatever the sentence is, let it come.

" By Mr. McNamara:

" Q. You don't care what the sentence is? A. I don't care what the sentence is."

The court in its charge gave the required admonitions about the testimony of an accomplice and the necessity for corroboration. It commented that Mantzinos undoubtedly expected some reward for his testimony, and that the jury might " well be * * * a little reluctant to accept the testimony of Arthur Mantzinos ", in which event, its attention was directed to the confession of Savvides.

What the jury was never told in this case, and what was always known to the trial prosecutor, was that Mantzinos had lied when he denied that he expected to receive any considera-

* The obvious effect upon the jury of this question and response was twofold: To anticipate cross-examination on the subject of reward, and, incidentally, to indicate that this very witness had himself confessed guilt to the very crime with which defendant was charged and about which the witness was then testifying.

tion on his own sentence and plea of guilty to the highest count against him in the indictment. The fact is that before the trial, in another part of the same court and before a different Judge, he pleaded guilty, on an express agreement, spread on the record. This agreement was that, if he were a co-operative witness, he would be permitted to withdraw his plea to a count that carried mandatory limits on sentence, and would have " the right " to plead to a lesser felony. After the trial, the agreement was consummated. Indeed, the prosecutor assured the sentencing Judge that Mantzinos had been " the ultimate factor " in achieving the conviction of Savvides. The plea was changed, and he received a suspended sentence.

There was no vice in these arrangements and, undoubtedly, the proof in the case is sufficient to sustain the verdict. The vice in this trial is that the jury was misled as to the arrangements made with an accomplice and convicted witness. His credibility, as a matter of law, was weak. The actual arrangements for reward might well supply an effective motive for falsehood favorable to the prosecution. Such motive it would be the jury's burden to weigh and consider. Such burden the court properly charged the jury to carry. In fact, the jury was clearly told in the charge that Mantzinos would undoubtedly be rewarded for his co-operation. But the jury, with the knowledge of the prosecutor, and despite the frustrated exploration by defense counsel and the court, was not to have the facts, only vague intimation, upon which to make the assessment. Nor did the jury know of something even more significant.

The jury did not know that Mantzinos, on this trial, had given misleading, half-true answers on direct examination — and false answers on cross-examination. Surely, the jury was entitled to know in weighing the credibility of the accomplice witness — that even there and then at the trial he was ready to falsify if he believed it would benefit him in his own case. The trial prosecutor was silent. The jury and the Trial Judge were left uninformed on the very issues of credibility to which the Judge devoted correctly a substantial section of his charge. It is fundamental that the presumption of innocence raised by a plea of not guilty makes the credibility of every witness for the People a critical question of fact for the jury. (*People* v. *Walker*, 198 N. Y. 329, 334.)

It has been said so many times that the prosecutor is a quasi-judicial officer, whose duty it is to see that a defendant has a fair trial, unmask perjury even of his own witnesses, and, under no circumstances, knowingly permit a court, a jury, or

a defendant to be the victim of a fraud. (*People* v. *Creasy,* 236 N. Y. 205\*; *Mooney* v. *Holohan,* 294 U. S. 103; cf. *People* v. *Fielding,* 158 N. Y. 542, 547; *Berger* v. *United States,* 295 U. S. 78, 88; and see, generally, 23 C. J. S., Criminal Law, § 1081.) Such a fraud was committed in this case by a witness who was later to be characterized by the prosecutor as "the ultimate factor" in achieving the conviction of Savvides. Although the fact of the fraud was known, it was never corrected. The prosecutor had a duty to elicit the truth from his own witness, or at least, advise the Trial Judge of all the circumstances. (There is no doubt that the trial prosecutor's omission should be deemed inadvertent and was probably due either to confusion, overzealousness, or insufficient experience.)

Not to be mistaken with this are those cases where improper acts are attributed to police and prosecutor, the facts and claims are developed in the trial, the proof of defendant's guilt is substantial and even overwhelming, and the jury has nevertheless convicted. In such cases, the jury, knowing all that was available, has rendered its verdict. (Cf. *People* v. *Lovello,* 1 A D 2d 162.) Here, the jury did not know, and an appellate court may not substitute its verdict for that of the jury, saying that, in any event the jury should have and would have convicted. As observed by our Court of Appeals: "if the court believes that the errors may have misled the jury, may have influenced the verdict, then the error may not be deemed technical, and a reversal will follow—*even though the court may conclude that the jury properly decided the case on the evidence as adduced.* \* \* \* It is for jurors, not judges of an appellate court such as ours, to decide the issue of guilt". (*People* v. *Mleczko,* 298 N. Y. 153, 162–163.) (Emphasis supplied.) It is, thus, not for us to say that the confession and proof of the corpus delicti were alone sufficient to satisfy the jury, and it must have convicted Savvides. For, every factual element of a crime, no matter how clearly proven, is for the jury alone to determine. (*People* v. *Walker,* 198 N. Y. 329, 334, *supra.*)

The heinousness of narcotics peddling, and even the clearness of defendant's guilt, cannot justify an unfair trial. So, too, where an alleged moral lecher is involved and there is ample proof of guilt, the essentiality of a fair trial is never forsworn.

---

\* In the *Creasy* case, although the perjured testimony related only to the motive of defendant, the court, in view of the knowledge of the prosecutor of the perjury, found the trial to have been unfair (pp. 218–221). The credibility of a critical witness is certainly as important a consideration for the jury as the motive of the alleged perpetrator of the crime.

(Cf. *People* v. *Jelke*, 308 N. Y. 56, in which public trial, which is related to fair trial, was involved.\*) While narcotics peddling injures some, an unfair trial injures everyman, for it degrades the administration of justice.

The motion for a new trial should be granted, the judgment of conviction should be vacated, and defendant remanded for a new trial.

BOTEIN and COX, JJ., concur with RABIN, J.; BREITEL, J. P., dissents and votes to reverse in opinion, in which FRANK, J., concurs.

Judgment affirmed.

---

\* " To the plaint that such a ruling will result in reversal of a conviction of one clearly proved guilty, it is sufficient to say that decision herein far transcends the issue of Jelke's guilt or the disposition of this particular case. As one court has expressed it (*People* v. *Murray, supra,* 89 Mich. 276, 286), ' It is for the protection of all persons accused of crime — the innocently accused, that they may not become the victim of an unjust prosecution, as well as the guilty, that they may be awarded a fair trial — that one rule [as to public trials] must be observed and applied to all ' " (pp. 67–68).