■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH LANE, Appellant.—Judgment, Supreme Court, New York County (Myers, J.), rendered on March 25, 1987, convicting defendant of first degree robbery and sentencing him to an indeterminate prison term of 2 to 6 years, unanimously reversed, on the law, and the matter remanded for a new trial.

On July 31, 1985, in the late afternoon, a young woman named Frances Silva was robbed at gunpoint on an outside stairway near 155th Street and Amsterdam Avenue in Manhattan. The central issue at trial was whether the perpetrator of that robbery was defendant Kenneth Lane. Ms. Silva's description of the robber, given to police officers later that same day, was of a man 5 feet, 3 inches or 5 feet, 4 inches tall, weighing between 125 and 130 pounds, with a gap between his two front teeth. On arrest five months later, defendant Lane was recorded as being 5 feet, 11 inches tall and weighing 160 pounds, with capped front teeth. Ms. Silva selected defendant's photo from a large police book the same day of the robbery, and five months later on January 2, 1986, picked defendant out of a lineup describing herself as "100% sure" that defendant was in fact the offender. Thus, the central issue for the jury to decide in this case was the accuracy of Ms. Silva's identification of defendant. There were no other witnesses to the crime.

In the course of its charge the trial court initially gave

appropriate guidance to the jury on the proper weighing of identification testimony, focusing upon the usual considerations of the lighting at the scene (bright sunlight), the length of time (three minutes) the witness had to observe her assailant, the close distance (about a foot) between the robber and the victim, and the emotional state of the victim herself. Unfortunately, however, the court did not limit its discussion of the subject to such standard treatment, but further undertook to develop the distinction between the ability to recognize a person as contrasted with the frequently lesser ability to describe that same person. The court referred to the three police witnesses who had testified and asked the jurors whether they would recognize them and yet not know their heights and weights. For further emphasis the court then mentioned four prominent political figures—ex-Presidents Truman, Nixon, and Eisenhower, and then Governor Cuomo—as illustrations of the oft-present ability to identify a subject without being able to render a description. Also, recognition and appearance of fellow jurors were alluded to in the same argumentative context. All of the foregoing was cited by the court as a test to resolve the question of whether the discrepancies contained in Ms. Silva's earliest report of the crime were "crucial" or inconsequential on the main issue before the jury. Defendant objected to this portion of the charge.

In our view, the proliferation of these examples raised the real risk that the jury would believe the court itself discounted the defendant's basic defense, i.e., that the inaccuracy of Ms. Silva's description alone raised a reasonable doubt (see, People v Holiday, 70 AD2d 645), and "that the stated opinion of the trial court or even the suggestion of an opinion might be seized upon by the jury and eventually prove decisive." (People v Mendes, 3 NY2d 120, 121; see also, People v Williams, 133 AD2d 717, 719.)

In sum, we find that the trial court's directions upon the central identification issue deprived defendant of a fair trial (People v Vasquez, 120 AD2d 757), and for this reason we reverse and remand. In view of this conclusion it is unnecessary to consider whether the court should have, sua sponte, delivered a charge on the alibi offered by defendant in the absence of any request therefor. Concur—Murphy, P. J., Sandler, Ross, Kassal and Wallach, JJ.