■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE ROMAN, Appellant.—Judgment, Supreme Court, New York County (Allen Murray Myers, J.), rendered May 15, 1987, convicting defendant after jury trial of criminal sale of a controlled substance in the third degree, and sentencing defendant to an indeterminate term of 6 to 12 years' imprisonment, unanimously reversed, on the law, and the matter remanded for a new trial.

Defendant was indicted and convicted for the sale of three glassine envelopes of heroin to an undercover officer on October 22, 1986. The purchase of the narcotics, which took place on a bench in FDR Park in lower Manhattan, was not filmed or recorded; the only witness to the sale was the undercover officer. After the purchase, numerous officers converged on the area where the sale took place. While people began to scatter, defendant remained seated and did not attempt to flee. No prerecorded "buy" money or narcotics substances (other than those sold) were recovered. Defendant presented no witnesses or testimony at trial, and argued that the undercover officer's testimony was mistaken.

We find that numerous comments by the Trial Judge, and erroneous instructions to the jury, deprived defendant of a fair trial. During the presentation of the People's case, when the People requested an adjournment to the following day for the convenience of a witness, the court repeatedly asked defendant's counsel in front of the jury if counsel wished to present any evidence at that time. This colloquy improperly suggested to the jury that defendant had some obligation to present evidence, and that the court expected defendant to present evidence. The curative instruction which was given later, properly advising the jury that defendant has the right to remain silent and has no burden of proof, did not obviate the prejudice to defendant, since the court went on to comment that defendant has a "right" to testify and that the court was affording defendant the "opportunity" to testify.

Moreover, after being advised that defendant did not have any evidence to present prior to the close of the People's case, the court gratuitously advised the jury that he expected to charge the jury on Monday, and "guessed" that before the end of the day there would be a verdict, otherwise the jury would be sequestered in a hotel for the night. The jury could only have concluded from these remarks that the court had already determined defendant's guilt.

The court's charge to the jury began with the definition of a trial as "a civilized method of determining the guilt of the accused", omitting the possibility that a trial is equally designed to determine innocence. The court continued in the same vein in its charge on reasonable doubt, instructing the jurors to reject that testimony they believed to be false, "if indeed you believe that any of it was false."

The court marshaled the evidence in an entirely prejudicial and uneven manner, summarizing all of the People's evidence

in an inordinately lengthy and overly detailed manner, with reference to the testimony of each of the police officer witnesses, and even the numbers of years certain police officers had been on the force, their rank and experience. The court made reference to the People's exhibits, when doing so went far beyond what was necessary to explain the material legal principles in this simple case, where the only disputed issue was identification. In contrast, the court failed to mention that the defendant did not attempt to flee, or that no "buy" money or other narcotics had been recovered, and that the confirmatory identification was made from a distance of over 25 feet— all of which was crucial to defendant's arguments.

Further, in charging the jury on the issue of identification, the court unfairly bolstered an argument made by the prosecutor, which distinguished between the ability to identify and the ability to describe. While advising the jury of this distinction in itself might not have been error, we have previously held that the court, in doing so, must not give such a proliferation of examples as to make it appear that the court itself rejected defendant's arguments. *(People v Lane,* 143 AD2d 581.) Here, the language employed similarly raised the inference that the court itself believed the distinction dispositive of the case. Thus, the court stated, *"I am sure* that each one of you [the jury] if you meet each other a year or two from today will be able to recognize the other, maybe not * * * But, if someone were to ask you, what does Juror Number Two look like * * * *I'm sure* that you would have twelve different descriptions" (emphasis added).

Finally, in response to a request for a readback from the jury of testimony by a backup officer to another backup officer that the seller had been arrested, the court, rather than advising the jury that the requested testimony had been stricken as hearsay, or that there was no such testimony, over objection read the jury testimony that it felt was "the closest" to that requested. This was not a meaningful response to the jury's request. *(People v Malloy,* 55 NY2d 296.) Moreover, the court instructed the reporter to read back testimony where a backup officer stated that the undercover officer had confirmed defendant's identity. This testimony, while in evidence, was both hearsay and bolstering, and should not have been highlighted at a crucial stage of the trial, especially since it was unresponsive to the jury's request. Concur—Ross, J. P., Carro, Milonas, Rosenberger and Ellerin, JJ.

■ SYLVIA SCHWARTZ, Individually and as Administratrix of