■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SEDRICK HALL, Appellant.—Judgment, Supreme Court, New York County (Allen M. Myers, J.), rendered January 7, 1987, convicting defendant, after a jury trial, of robbery in the third degree and sentencing him to an indeterminate term of imprisonment of 3½ to 7 years unanimously reversed, on the law and the facts, the judgment vacated and the matter remanded for a new trial.

We find that the cumulative effect of a *Sandoval* ruling and several comments during the charge were prejudicial to the defendant, requiring a reversal of the judgment and a new trial.

The defendant was convicted by a jury of the December 11, 1985 assault and robbery of Margaret Harmsworth. The People's case hinged upon the eyewitness testimony of the victim, Ms. Harmsworth. She testified that at approximately 10:30 P.M. on December 11, 1985, the defendant, who was unknown to her, approached her on the sidewalk in front of her residence, struggled with her for possession of her handbag, struck her on the shoulder and ran off with the handbag. The defendant was wearing a sweatshirt with a hood that covered his hair. That evening Ms. Harmsworth described her assailant to police as slender, five feet, nine inches tall and clean-shaven. She admitted, upon cross-examination, that she had been using methadone for 18 years.

On January 28, 1986, approximately seven weeks later, Ms. Harmsworth, upon viewing a lineup, identified the defendant as her assailant. When arrested, the defendant told police that he was five feet, eight inches tall and that he weighed 160 pounds. The defendant, who had a slight mustache, gave police a home address which is only a few city blocks away from the location of the robbery. The defendant did not testify at trial.

The owner of the hotel in which Ms. Harmsworth lived testified for the defense that he had known her for 14 months, that her reputation for honesty was "very bad", and that he had tried twice, unsuccessfully, to evict her from the hotel.

We reverse for several reasons.

First, the trial court erred in ruling on the defendant's *Sandoval (People v Sandoval,* 34 NY2d 371 [1974]) motion that, should the defendant take the witness stand, the People could fully explore two prior convictions for attempted robbery as well as the underlying facts. The first conviction in 1981 involved defendant and companions setting fire to occupied token booths and demanding money from clerks who were inside while the booths were engulfed in flames. One of the clerks was burned while trying to escape and a second fled without injury. Another conviction in 1986 resulted from the defendant and four others surrounding a man on the street and stealing his gold chain.

"Pursuant to *People v Sandoval* (34 NY2d 371) and its progeny, a trial court has an obligation to strike a balance between the prosecutor's right to impeach a defendant's credibility and the danger of establishing in the minds of the jury a propensity by the defendant to commit the crime charged." *(People v Bowles,* 132 AD2d 465, 466 [1st Dept 1987].) Where,

as here, the prior crimes are similar to the crime for which the defendant is being tried and the underlying facts are so-shocking, the risk of unfair prejudice is particularly pronounced since, despite the most clear and forceful limiting instruction, a jury is likely to have considered evidence of the prior crimes as some proof of the commission of the crime charged rather than as solely probative of the defendant's credibility. *(People v Sandoval,* 34 NY2d, *supra,* at 377-378; *People v Bowles, supra; People v Acevedo,* 83 AD2d 813, 814 [1st Dept 1981].) Moreover, it cannot be said that this error was harmless since proof of the defendant's guilt was not overwhelming and the defendant contends that the pretrial ruling resulted in his decision not to testify in his own behalf. *(See, People v Williams,* 56 NY2d 236, 241 [1982].)

Second, the court's charge on identification, and marshaling of the evidence in favor of the People, tended to mislead the jury, specifically with respect to the relevance of the complainant's prior description of the assailant.

The Trial Judge correctly instructed the jury that the People bore the burden of proof as to identification and that they were to take into consideration all of the facts and circumstances, in addition to those mentioned by him, in judging the reliability of the complainant's identification. While terming the lighting conditions "good" and stating that the witness and her assailant "were face to face without any interfering factors", the court failed to mention that the assailant wore a hood covering his hair and ears, or to point to any omissions in the witness's description. The charge, therefore, was not balanced. *(See, People v Williamson,* 40 NY2d 1073, 1074 [1976].)

Recently, in *People v Roman* (149 AD2d 305 [1st Dept 1989]), we reversed a conviction for criminal sale of a controlled substance and remanded for a new trial where, *inter alia,* the Trial Judge in instructing the jury summarized all of the People's evidence in an overly detailed manner and failed to mention the crucial elements of the defense case.

Third, the trial court diminished the significance of the People's burden of proof and of the presumption of innocence when it charged the jury as follows: "the defendant is presumed to be innocent *for the purposes of the trial.* The presumption of innocence to which I am referring is a *device,* imposed by the law, which places the prosecution under an obligation to overcome that presumption * * * in other words, the law wrapped a cloak of innocence around a defendant"

(emphasis supplied). This language may have encouraged the jury to minimize the presumption's significance. *(See, People v Alvarez,* 96 AD2d 864, 865 [2d Dept 1983].)

Finally, the court made an unnecessary (and erroneous) reference to double jeopardy. After the jury had deliberated for several hours, it sent a note into the court stating that it was deadlocked eight to four. When the jury was brought in, the court explained that it had not deliberated long enough and should continue. The court, in addition, made the following reference to double jeopardy: "There is such a thing as double jeopardy which is forbidden by our Constitution and if I should prematurely discharge this jury, the People may never be able to try this defendant again before another jury because that would be considered double jeopardy." Concur— Carro, J. P., Rosenberger, Ellerin, Wallach and Smith, JJ.