(October 30, 1990)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRIS CLEMONS, Appellant.—Judgment of the Supreme Court, New York County (Dennis Edwards, J.), rendered on December 4, 1986, convicting defendant, after a trial by jury, of two counts of robbery in the first degree and one count of assault in the first degree and sentencing him, as a predicate felon, to concurrent terms of 12½ to 25 years' imprisonment on each robbery count and to 7½ to 15 years' imprisonment on the assault count, is unanimously reversed, on the law and as a

matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court for a *Huntley* hearing and a new trial.

After the complainant left the restaurant where he was working on March 29, 1986, he went to a bar and then to a motel with a woman he had met at the bar. When he left the motel at 5:00 A.M., he decided to walk for a while to clear his head before driving home. As he walked up 42nd Street, defendant, who was dressed as a woman, tapped him on the shoulder and made a sexual offer. The complainant refused and began to walk away but defendant approached him from behind, cut his right pants' leg with a sharp instrument and removed the complainant's wallet. Defendant then cut the complainant's face, chest and hand before fleeing across 42nd Street.

The complainant followed and three young men from New Jersey joined in the chase. While one of the men from New Jersey cornered defendant by a fence and tried to detain him by punching him, the complainant, who was bleeding, approached Officers Charlton and Holihan and told them to go after defendant. The officers had also witnessed the fight between defendant and the complainant. Officer Charlton subdued defendant and handcuffed him to the bumper of his police truck where he was identified by the men from New Jersey. The complainant arrived with Officer Holihan a few minutes later and also identified defendant as his assailant. A utility knife and a wig were recovered from a nearby alley.

Defendant testified that he was a transvestite working as a prostitute on March 29, 1986 and that while he was standing on the corner of 42nd Street and Tenth Avenue, the complainant approached and asked him for a "date". Defendant told him it would cost $100 and went with the complainant to a parking lot. The complainant refused to pay and slapped defendant who then slapped him back. A struggle ensued, and when defendant realized that the complainant had cut him, he grabbed the knife and started swinging it at the complainant. He then ran down the street but was stopped by the police and the men from New Jersey who punched and kicked him.

We disagree with defendant's contention that the Supreme Court erred in denying his motion to suppress identification testimony. While showup identifications are strongly disfavored, they are permissible where suspects are captured at or near the crime scene and can be viewed by witnesses immediately *(People v Riley,* 70 NY2d 523, 529; *People v Brown,* 158

AD2d 375, *lv denied* 76 NY2d 731). The fact that defendant was handcuffed at the time of the showups did not warrant the suppression of the identification evidence *(People v Muhammad,* 159 AD2d 266, *lv denied* 76 NY2d 740). Defendant was apprehended within minutes of the crime after a chase in which he remained within sight of the complainant and then of the officers *(see, People v Muhammad, supra).*

We do agree with defendant, however, that the cumulative effect of the errors committed by all the participants at this trial requires a reversal of his conviction *(People v Dowdell,* 88 AD2d 239). While some of the errors were not objected to by defense counsel, we reach them in the interest of justice.

Initially, the trial court erred in denying defendant's motion for a *Huntley* hearing. In his omnibus motion, defense counsel claimed that a statement made by his client to the police was involuntarily made because defendant had not been advised of his *Miranda* rights. He further claimed that the pain defendant suffered as a result of beatings he sustained at the time of his apprehension prevented him from understanding the warnings even if they had been administered. The court denied the motion after the prosecutor represented that defendant's statement would only be used for impeachment purposes. The prosecutor, over defense counsel's objection, used the statement on cross-examination to impeach defendant's testimony. An officer also testified to defendant's statement on rebuttal.

CPL 710.60 mandates that a *Huntley* hearing be held whenever defendant claims that his statement was involuntary *(People v Weaver,* 49 NY2d 1012). Had defendant's claim that his statement was involuntary been substantiated at a *Huntley* hearing, the prosecutor would have been precluded from using it to impeach defendant's testimony *(Mincey v Arizona,* 437 US 385; *People v Maerling,* 64 NY2d 134).

Defendant was deprived of a fair trial by the misconduct of the prosecutor, whose questioning and comments during summation exceeded the bounds of legitimate advocacy *(People v Hicks,* 102 AD2d 173). At the conclusion of a *Sandoval* hearing, the court ruled that the prosecutor would be permitted, should defendant testify at trial, to inquire whether defendant had previously been convicted of one felony and two misdemeanors. The prosecutor was also permitted to ask one question with respect to warrants which had been issued for defendant.

On cross-examination, the prosecutor asked defendant about

his arrests for prostitution and his failure to pay the fines imposed for those offenses. This limited questioning was proper, however, since defense counsel, on direct examination and despite the court's ruling, "opened the door" by asking defendant about his arrests for prostitution, loitering for prostitution and a warrant that was issued when defendant failed to appear in court. In his summation, however, the prosecutor disregarded the court's *Sandoval* ruling and informed the jury that defendant's two misdemeanor and felony convictions were not for prostitution, thereby inviting the jury to speculate as to the nature of these convictions. The questioning by defense counsel did not open the door so wide as to permit the comments of the prosecutor. *(See, People v Dowdell, supra.)*

While the credibility of the witnesses was certainly a central issue at this trial, the prosecutor's vituperative attack on defendant and his attorney cannot be characterized as legitimate advocacy nor as a proper response to defense counsel's summation. The prosecutor told the jury not to listen to defense counsel's "Alice in Wonderland" version of the facts, nor to follow the trail of the red herring. He suggested that counsel would lie to protect his job with Legal Aid and described counsel's cross-examination of the complainant as "two hours of slander * * * two hours of character assassination".

Referring to defendant, an admitted transvestite, the prosecutor stated "this poor soul who sits before you dressed as a woman", "a person whose entire life is a fraud", is "totally amoral * * * [T]ruth, oath, lies mean nothing to him. * * * He is willing to be a receptacle for any man who comes along with a few bucks." He added that "[y]ou cannot embarrass that man. * * * What more could you possibly do that would make that man ashamed? He has done everything already himself." The prosecutor then stated that although defendant thinks he's the Mayflower Madam, he's actually just a common street prostitute. The prosecutor also referred to the fact that defendant had rosary beads at trial and labeled him "Mother Theresa at the defense table." In addition to the attack on defendant and his attorney, the prosecutor vouched for his witnesses and appealed to the prejudices of the jury. While some of the comments were not objected to, proper objections of defense counsel were overruled by the trial court, thus giving "standing to the statement[s] of the District Attorney as legitimate argument" *(People v Lovello,* 1 AD2d 162,

169 [Peck, J., dissenting], quoted with approval *People v Broady,* 5 NY2d 500, 516; *People v Ashwal,* 39 NY2d 105, 111).

The court's charge was also erroneous. The definition provided for "intent", as it related to the robbery counts, was incomplete, the "reasonable doubt" charge was confusing and the charge on the "presumption of innocence" minimized the significance of the presumption *(People v Hall,* 155 AD2d 344). An instruction on "intent" was completely omitted from the court's supplemental charge on the robbery counts *(see, People v Katz,* 290 NY 361). Nor did the court charge the jury that the indictment had no evidentiary value. We note that the court further erred in permitting an officer to testify to the complainant's out-of-court identification of defendant after the complainant testified to having made such an identification *(People v Trowbridge,* 305 NY 471).

While defendant also questions the effectiveness of his trial counsel, we cannot conclude on the present record that the assistance of counsel received by defendant was constitutionally ineffective *(People v Love,* 57 NY2d 998). Moreover, we reject defendant's contention that the trial court failed to act in a fair or impartial manner. Concur—Murphy, P. J., Ross, Carro and Rosenberger, JJ.