People v Brebnor (2024 NY Slip Op 50981(U))

[*1]

People v Brebnor

2024 NY Slip Op 50981(U)

Decided on July 23, 2024

Supreme Court, Queens County

Yavinsky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 23, 2024
Supreme Court, Queens County

The People of the State of New York

against
Catherine Brebnor, Defendant.

Index No. 71256/2024

ADA Gabriella Malfi (Queens County District Attorney) for the People. 
David Blondell, Esq. (Legal Aid Society) for the Defendant.

Michael J. Yavinsky, J.

The Defendant, Catherine Brebnor, has submitted an omnibus motion, dated June 24, 2024, seeking: invalidation of the People's certificate of compliance and dismissal of the indictment; inspection of the Grand Jury minutes and reduction or dismissal of the indictment; a voluntariness hearing; preclusion of statement evidence; preclusion of identification evidence; a Rodriguez hearing; a Bill of Particulars; the preservation and production of recordings; any and all Brady material; disclosure of vicious or immoral acts and a Sandoval hearing; and the reservation of rights to make further motion. The People's response, dated July 15, 2024, provides a Bill of Particulars but otherwise opposes the relief sought. The Court decides the motion as follows:
The Defendant's Motion to Invalidate the People's Certificate of Compliance
The Defendant has moved to invalidate the People's certificate of compliance (which was served and filed on May 10, 2024) because she argues that there are three categories of discovery which have not been disclosed and are therefore in dispute: 1) disciplinary records and other impeachment material for three police officers; 2) curricula vitae for two doctors; and 3) body-worn camera audit trail logs. The Court's staff held a discovery conference on July 18, 2024 to discuss these matters with the attorneys. The Court will now address each category in dispute:
1) Police Disciplinary Records and Other Impeachment Material
The Defendant argues that the People's certificate of compliance was not valid because the People did not disclose LEOW letters and underlying records for three police officers. In their response, the People state that they provided LEOW letters and underlying records which were available for thirteen other police officers. When the People became aware that those letters and records were not yet available for three police officers, they filed a certificate of compliance and indicated that those items were outstanding and that they would be disclosed upon receipt. The People affirm that those documents have since been obtained and shared with [*2]defense counsel on July 10, 2024. Furthermore, the People affirm that they do not intend to call any of those three witnesses at trial.
As there is no appellate authority from either the New York Court of Appeals or the Appellate Division, Second Department regarding the breadth of disclosure required for law enforcement disciplinary records, this Court has considered relevant statutes and appellate decisions from other departments. Criminal Procedure Law §245.20(1) provides:
The Prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to . . . [21 categories of discovery]
Furthermore, CPL §245.20[1][k][iv] requires the People to provide "all evidence and information that tends to . . . impeach the credibility of a testifying prosecution witness." In People v Johnson, the Appellate Division, Fourth Department, held that the "defendant was not automatically entitled to the entirety of a police officer's personnel file as impeaching material under CPL § 245.20(1)(k)(iv), but rather only to the extent that the information 'related to the subject matter of the case'" (218 AD3d 1347 [4th Dept 2023], quoting CPL §245.20[1]). Therefore, the Fourth Department did not require the prosecution to disclose any disciplinary records from unrelated matters in order for their certificate of compliance and statement of readiness to be valid. Additionally, in People v McCarty, the Appellate Division, Third Department, found that a defense argument that the prosecution must disclose the entire disciplinary record for each and every law enforcement officer involved with a case was "belied by a plain reading of the automatic disclosure statute, which requires the People to disclose 'all items and information that relate to the subject matter of the case" (221 AD3d 1360, 1362 [3rd Dept 2023]). The Third Department noted that their decision was "consistent with the balancing of interests espoused by the Court of Appeals in People v Garrett, 23 NY3d 878, 888-91 (2014)" (id.). Although decided before Criminal Procedure Law article 245 was enacted, in Garrett, the Court of Appeals held that "the People have no affirmative duty to search the dockets of every case in every federal and state court in New York for complaints against their police witness . . . This would impose an unacceptable burden upon prosecutors that is likely not outweighed by the potential benefit defendants would enjoy from the information ultimately disclosed on account of the People's efforts" (Garrett at 890). 

The Court is aware that other trial courts have opined that this view ofCPL § 245.20(1)(k)(iv) is too restrictive a view and could not possibly fit the Legislature's intent when initially passing this discovery reform. However, because there is no authority from the New York Court of Appeals or the Second Department on this issue, this Court must accept the precedents set by the Third and Fourth Departments. Indeed, in Mountain View Coach Lines, Inc. v Storms, the Appellate Division, Second Department held "[t]he Appellate Division is a single statewide court divided into departments for administrative convenience and, therefore, the doctrine of stare decisis requires trial courts in this department to follow precedents set by the Appellate Division of another department until the Court of Appeals or this court pronounces a contrary rule" (102 AD2d 663 [1984]). 
The People have now provided LEOW letters for all 16 police officers listed in their certificate of compliance and there is no dispute for this category of discovery. Accordingly, the [*3]Court finds that the People have complied with their discovery obligations under CPL §245.20(1) regarding law enforcement disciplinary records, and their failure to disclose the additional material requested by the Defendant at the time they filed their certificate of compliance did not invalidate the People's certificate of compliance. The Court notes that "this ruling does not diminish a defendant's other rights of access to misconduct evidence for potential impeachment of a witness at a hearing or trial. The District Attorney remains obligated, as a matter of due process, to disclose favorable evidence that 'may affect only the credibility of a government witness'" (People v Lewis, 78 Misc 3d 877 [Sup Ct, Kings Cty 2023], quoting People v Steadman, 82 NY2d 1 [1993]). The Defendant "may use the subpoena process to seek records underlying police misconduct" (id.). 
2) Curricula Vitae of Doctors
The Defendant further argues that the People's certificate of compliance should be invalidated because they did not disclose the curricula vitae (CVs) of two doctors listed as potential witnesses in their certificate of compliance. At the discovery conference and in their written response, the People indicated that those CVs are not in their possession and need to be obtained via subpoena. The People affirm that they have sent subpoenas for both resumes and that they are still not in possession of them. Although the People were not able to state the exact date on which the subpoenas were sent, they estimate that the subpoenas were sent between May 1, 2024 and May 10, 2024. The People indicate that as soon as they receive those CVs, they will disclose them to the Defendant.
3) Body-worn Camera Audit Trails
The Defendant argues that the People's certificate of compliance should be invalidated because the People failed to disclose "BWC Audit Logs". In their response, the People argue that the body-worn camera audit trails are not discoverable because they do not relate to the subject matter of the case. However, the People indicated that they did, nonetheless, disclose these audit trails to the Defendant on July 10, 2024.
CPL § 245.20(1) requires the People to disclose to the defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control". The People must disclose this initial automatic discovery within thirty-five calendar days of the Defendant's arraignment where the defendant is not in custody (CPL §245.10[1][a][ii]) unless the discoverable materials are "exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution," in which case an extension may be granted pursuant to CPL §245.70 (CPL §245.10[1][b]). Furthermore, pursuant to CPL §245.60, both the People and the Defendant have a continuing duty to disclose "additional material or information which it would have been under a duty to disclose pursuant to any provisions of this article had it known of it at the time of a previous discovery obligation or discovery order".
"[W]hether the People made reasonable efforts to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (People v Bay, 41 NY3d 200 [2023]). "Although the statute nowhere defines 'due diligence,' it is a familiar and flexible standard that requires the People 'to make reasonable efforts' to comply with statutory directives (id. quoting People v Bolden, 81 NY2d 146, 155 [1993]).... Although the relevant factors for assessing due diligence may vary from case to case, the courts should generally consider, among other things, the efforts made by the [*4]prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material might have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of missing discovery" (Bay at 212). 
The Court has considered the factors that the Court of Appeals listed in Bay and finds that the People have exercised due diligence in providing discovery for this case. First, considerable efforts have been made by the People to generate the discovery they are obligated to turned over in this and every case. For example, the Queens County District Attorney's Office has established a Discovery Compliance Unit to coordinate with law enforcement agencies in an effort to streamline both interagency communication and the exchange of discoverable information. Additionally, the Queens County District Attorney's Office has also established a Law Enforcement Officer Witness Unit to obtain disciplinary information for their witnesses as well as a Forensic Science Unit to obtain scientific and forensic evidence that may exist in any case. Finally, the Queens County District Attorney's Office has also embedded paralegal discovery liaisons in many of its bureaus, whose duties and responsibilities include interacting with a variety of law enforcement agencies in an effort to oversee discovery compliance and to troubleshoot any outstanding discovery issues. The creation of these additional units and allocation of resources to generally address their discovery obligations under CPL Article 245 support a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Second, in comparing the amount of discovery turned over to the amount of discovery outstanding, it is clear that the People have exercised due diligence. It is not in dispute that the People have turned over voluminous discovery, including 223 total sets of files (the 210 with the original certificate of compliance and 13 files since then), which contained hundreds of pages of material and attachments including body-worn camera footage, police disciplinary records, and medical records. In contrast, the outstanding discovery consists of two curricula vitae from potential expert witnesses. It is self-evident that the comparison of the discovery turned over to the discovery outstanding supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Third, in analyzing the complexity of this case, all indications provided to this Court is that the instant case is not a particularly complex case. Indeed, during the discovery conference, both parties agreed that the case was not particularly complex. 
Fourth, it does not appear to this Court that the People missed any discoverable material in this case other than the two outstanding CVs. Criminal Procedure Law section 245.20(1)(f) provides that if "in the exercise of reasonable diligence" expert witness CVs are:
unavailable for disclosure within the time period specified in subdivision one of section 245.10 of this article, that period shall be stayed without need for a motion . . . except that the prosecution shall notify the defendant in writing that such information has not been disclosed, and such disclosure shall be made as soon as practicable and not later than sixty calendar days before the first scheduled trial date . . . .
The Court finds that the People have exercised reasonable diligence by sending subpoenas for the two expert witness CVs. Furthermore, the People did notify the Defendant in writing in their certificate of compliance that these items were outstanding. Finally, this case is not yet in a trial posture, so the People are not in violation of the final provision which requires disclosure no [*5]later than sixty days before the first scheduled trial date. Although the CVs are "discoverable inasmuch as they relate to the subject matter of the case, the People established that those" CVs "were not in their possession and control when the COC was filed" (People v Walker, 228 AD3d 1318 [4th Dept 2024]). Accordingly, the Court finds that the People have complied with their discovery obligations with respect to this category of discovery. The People are directed to make every effort to obtain the expert witness CVs and disclose them to the Defendant upon receipt.
During the discovery conference, defense counsel conceded that he appeared to be in possession of all discovery for the case other than the expert witness CVs. The People acted with reasonable diligence by subpoenaing the CVs and are in compliance with the statute, which requires them to be disclosed to the Defendant no later than sixty days before the first scheduled trial date. The fact that the People did not miss any discoverable material supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case. 
Fifth, there is no explanation for any error regarding discoverable materials because there does not appear to have been any error. As mentioned above, the People are still within the statutory framework for disclosure of expert witness materials. As such, it also supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Finally, the response by the People when they learned of the missing discovery (three LEOW letters, CVs, and audit trails [FN1]
) further indicates an exercise of due diligence. The People sought to obtain these records and disclosed them to the Defendant upon receipt of them. The People timely pursued all discovery corrections in this case, and that also supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligations in this case. 
In total, the People have exercised due diligence and made reasonable efforts to identify mandatory discovery prior to filing their certificate of compliance in this case. During the discovery conference, defense counsel conceded that he believed the People had acted with due diligence in obtaining and disclosing discovery in this case but felt that he was entitled to the outstanding discovery at the time the People filed their initial certificate of compliance. Accordingly, the Defendant's motion to invalidate the People's certificate of compliance, deem their statement of readiness illusory, and to dismiss the indictment due to a violation of her right to a speedy trial is denied.
[*6]The Defendant's Omnibus Motion
The branches of the motion seeking to inspect the Grand Jury minutes and dismiss or reduce the indictment are granted only to the extent that the Court has inspected the minutes of the Grand Jury. "To dismiss [or reduce] an indictment on the basis of insufficient evidence before a Grand Jury, a reviewing court must consider whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury" (People v Gaworecki, 37 NY3d 225 [2021], quoting People v Grant, 17 NY3d 613, 616 [2011]). The Court must determine if the evidence adduced before the Grand Jury was legally sufficient, meaning "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL §70.10[1]; People v Castro, 202 AD3d 815 [2d Dept 2022]). The evidence must provide prima facie proof of each offense, rather than proof beyond a reasonable doubt (People v Hulsen, 150 AD3d 1261, 1262 [2d Dept 2017]; see also People v Jessup, 90 AD3d 782, 783 [2d Dept 2011]). The reviewing court's inquiry is limited to "whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes, and whether the Grand Jury could rationally have drawn the guilty inference" (Gaworecki, supra, quoting Grant, supra).
The Court finds that the evidence adduced before the Grand Jury was legally sufficient to support all counts of the indictment. The People "maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" (People v Thompson, 22 NY3d 687 [2014]; People v Mitchell, 82 NY2d 509, 515 [1993], citing People v Lancaster, 69 NY2d 20, 25 [1986]).
Moreover, the District Attorney properly instructed the Grand Jury on the relevant law (People v Tunit, 149 AD3d 1110 [2d Dept 2017], citing People v Calbud, Inc., 49 NY2d 389 [1980]). To the extent that the Defendant alleges defects in the presentation of the case to the Grand Jury, the Court finds that the presentation was not defective as a matter of law. The minutes reveal that a quorum of the grand jurors was present during the presentation of evidence and at the time that the District Attorney instructed the Grand Jury on the law. No unauthorized person within the meaning of CPL §190.25 was present at any time during the proceedings (see People v Sayavong, 83 NY2d 702 [1994]). Also, no irregularity that would impair the integrity of the Grand Jury occurred (see People v Adessa, 89 NY2d 677 [1997]; People v Huston, 88 NY2d 400 [1996]). The release of additional Grand Jury minutes beyond what has been turned over by the People pursuant to the discovery provisions of Article 245 of the Criminal Procedure Law is denied since defense counsel has failed to demonstrate any compelling need for such action and the Court is able to determine the motion without assistance (see CPL §210.30[3]).
The branch of the motion seeking a voluntariness hearing is reserved for the trial court (see Jackson v Denno, 378 US 368 [1964]; Mincey v Arizona, 437 US 385 [1978]; People v Clemons, 166 AD2d 363 [1st Dept 1990]). 
The branch of the motion seeking preclusion of unnoticed statements made by the Defendant to members of law enforcement is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed statements on their direct case (see People v O'Doherty, 70 NY2d 479 [1987]).
The branch of the motion seeking to preclude identification testimony is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed police-[*7]arranged identifications on their direct case (People v McMullin, 70 NY2d 855 [1987]). 
The branch of the motion seeking to suppress identification evidence is denied. In their response, the People affirm that there were no police arranged identifications which occurred in this case. A review of the Court's file reveals that the People did not serve notice of a police-arranged identification pursuant to CPL § 710.30(1)(b). 
The branch of the motion seeking a Bill of Particulars and demand for discovery is granted to the extent provided by the People pursuant to CPL § 200.95 and CPL § 245.20.
The People are directed to make every effort to preserve Rosario material as well as all 911 calls, radio runs, sprint reports, surveillance footage, and any other recordings that are relevant to this case and make them available to the Defendant at the appropriate time as prescribed by CPL § 245.10 and CPL § 245.20(1)(g) (see People v Rosario, 9 NY2d 286 [1961]; People v Consolazio, 30 NY2d 446 [1976]).
The branch of the motion seeking all Brady material is granted to the extent that the Court reminds the People of their obligations under Brady v Maryland, 373 US 83 (1963).
The branch of the motion reserving the right to make further motions is granted to the extent permitted by CPL §255.20.
This constitutes the decision and order of the Court.
Dated: July 23, 2024
Queens, New York
Michael J. Yavinsky, A.J.S.C.

Footnotes

Footnote 1:As to body-worn camera audit trails, the Court notes that there is no appellate authority on whether the People need to disclose them as part of automatic discovery. In addition, the Court is also aware that there are a number of trial court cases which have found that body-worn camera audit trails are both discoverable and not automatically discoverable under CPL § 245.20. However, this Court finds that evidence audit trails are subject to automatic disclosure under CPL § 245.20(1)(e) because they can contain statements made by members of law enforcement. The Court also finds that the device audit trails and user audit trails are not related to the subject matter of the case and are therefore not discoverable. These two audit trails indicate things such as when the camera was plugged into a charger, battery life, and when a video was shared with another individual or entity.