People v Villarraga (2025 NY Slip Op 50043(U))

[*1]

People v Villarraga

2025 NY Slip Op 50043(U)

Decided on January 21, 2025

Supreme Court, Queens County

Yavinsky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 21, 2025
Supreme Court, Queens County

The People of the State of New York

against
Santiago Villarraga, Defendant.

Indictment No. 72438/2024

ADA Marina D. Shew (Queens County District Attorney) for the People.
David Blondell, Esq. (Legal Aid Society) for the Defendant.

Michael J. Yavinsky, J.

The Defendant, Santiago Villarraga, has submitted an omnibus motion, dated November 7, 2024, seeking: invalidation of the People's certificate of compliance and release from custody pursuant to CPL §30.30(2)(a) as a result of the People's illusory statement of readiness as well as an inspection of the Grand Jury minutes and reduction or dismissal of the indictment; a Bill of Particulars and discovery; suppression of physical evidence; suppression of statement evidence; suppression of identification evidence; a voluntariness hearing; preclusion of statement evidence; preclusion of identification evidence; the preservation of recordings; disclosure of vicious or immoral acts and a Sandoval hearing; any and all Brady and Rosario material; and the reservation of rights to make further motion. The People's response, dated December 13, 2024, provides a Bill of Particulars but otherwise opposes the relief sought. The Court decides the motion as follows:
The Defendant's Motion to Invalidate the People's Certificate of Compliance
The Defendant has moved to invalidate the People's certificate of compliance (which was served and filed on August 29, 2024) because he argues that the People failed to disclose a track and trace order for the Defendant's cell phone which was utilized by police officers who were attempting to apprehend him. The Court's staff held a discovery conference with the parties on December 16, 2024. During the discovery conference and in their moving papers, the parties agree that on October 24, 2024 at 5:50 PM, defense counsel alerted the assigned Assistant District Attorney (ADA) that the trap and trace order itself had not been disclosed. The People contend that they had turned over police reports regarding the existence of the trap and trace order and disclosed that a trap and trace order existed in the body of their original certificate of compliance. However, the People state that due to a "clerical error" the actual trap and trace order was not included with the discovery disclosure which preceded their original certificate of compliance. The People then e-mailed the trap and trace order to defense counsel on October 24, 2024 at 6:00 PM, which was only ten minutes after defense counsel had alerted the ADA [*2]about the missing item.
CPL §245.20(1) requires the People to disclose to the defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control". The People must disclose this initial automatic discovery within twenty calendar days of the Defendant's arraignment where the defendant is in custody (CPL §245.10[1][a][i]) unless the discoverable materials are "exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution," in which case an extension may be granted pursuant to CPL §245.70 (CPL §245.10[1][b]). Furthermore, pursuant to CPL §245.60, both the People and the Defendant have a continuing duty to disclose "additional material or information which it would have been under a duty to disclose pursuant to any provisions of this article had it known of it at the time of a previous discovery obligation or discovery order".
"[W]hether the People made reasonable efforts to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (People v Bay, 41 NY3d 200 [2023]). "Although the statute nowhere defines 'due diligence,' it is a familiar and flexible standard that requires the People 'to make reasonable efforts' to comply with statutory directives (id. quoting People v Bolden, 81 NY2d 146, 155 [1993]).... Although the relevant factors for assessing due diligence may vary from case to case, the courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material might have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of missing discovery" (Bay at 212). 
The Court has considered the factors that the Court of Appeals listed in Bay and finds that the People have exercised due diligence in providing discovery for this case. First, considerable efforts have been made by the People to generate the discovery they are obligated to turn over in this and every case. For example, the Queens County District Attorney's Office has established a Discovery Compliance Unit to coordinate with law enforcement agencies in an effort to streamline both interagency communication and the exchange of discoverable information. Additionally, the Queens County District Attorney's Office has also established a Law Enforcement Officer Witness Unit to obtain disciplinary information for their witnesses as well as a Forensic Science Unit to obtain scientific and forensic evidence that may exist in any case. Finally, the Queens County District Attorney's Office has also embedded paralegal discovery liaisons in many of its bureaus, whose duties and responsibilities include interacting with a variety of law enforcement agencies in an effort to oversee discovery compliance and to troubleshoot any outstanding discovery issues. The creation of these additional units and allocation of resources to generally address their discovery obligations under CPL Article 245 support a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Second, in comparing the amount of discovery turned over to the amount of discovery outstanding, it is clear that the People have exercised due diligence. It is not in dispute that the People have turned over voluminous discovery, including over 1,000 files, which contained hundreds of pages of material and attachments including 40 body-worn camera videos, 16 sets of DD5s which included hundreds of pages from six different branches of the NYPD, four 911 calls, and 81 different Law Enforcement Officer Witness (LEOW) disclosure letters. In contrast, [*3]the only outstanding discovery at the time the People filed their original certificate of compliance was the trap and trace order. It does not appear that there is any outstanding discovery as of the date of this decision. It is self-evident that the comparison of the discovery turned over to the absence of any outstanding discovery supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Third, in analyzing the complexity of this case, all indications provided to this Court is that the instant case is a complex case. During the discovery conference, the People argued that this case was more complex than an average case because there was more than one incident date and a large number of police officers who were involved with the investigation of this matter. Defense counsel agreed that this case did have a degree of complexity to it.
Fourth, the only discoverable material which the People missed in this case was the trap and trace order that was in their possession but not disclosed at the time they filed their original certificate of compliance. The fact that the People failed to disclose only the trap and trace order supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Fifth, the People's explanations for the alleged discovery errors are reasonable. The People indicate that they disclosed DD5 reports which referenced the trap and trace order, and even referenced the trap and trace order in their original certificate of compliance, but simply did not disclose this order to the defense with their original certificate of compliance due to a clerical error.
Finally, the response by the People when they learned of the missing discovery was reasonable. The ADA e-mailed the missing trap and trace order to defense counsel only ten minutes after being alerted that the trap and trace order was not part of their discovery disclosure. This communication between the People and defense counsel is exactly what the "diligent conferral" aspect of the new discovery law is all about. Defense counsel realized that a trap and trace order was used to locate his client but could not find it amongst the discovery materials. He alerted the ADA who almost immediately responded to his e-mail with the material that was requested. This supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case. 
In total, the People have exercised due diligence and made reasonable efforts to identify mandatory discovery prior to filing their certificate of compliance in this case. Accordingly, the Defendant's motion to invalidate the People's certificate of compliance, deem their statement of readiness illusory, and to release the Defendant on his own recognizance due to a violation of CPL §30.30(2)(a) is denied.
The Defendant's Omnibus Motion
The branches of the motion seeking to inspect the Grand Jury minutes and dismiss or reduce the indictment are granted only to the extent that the Court has inspected the minutes of the Grand Jury. "A court reviewing the legal sufficiency of an indictment must view the evidence in the light most favorable to the People and determine whether the evidence, if unexplained and uncontradicted, would be legally sufficient to support a verdict of guilt after trial" (People v Dunn, — AD3d &mdash, 2024 NY Slip Op 05808 [2d Dept 2024], quoting People v Holloway, 210 AD3d 1007 [2d Dept 2022]). "In the context of grand jury proceedings, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" [*4](id., quoting Holloway at 1008). "This Court's inquiry is limited to assessing whether the facts, if proven, and the logical inferences flowing therefrom, supply proof of each element of the charged crimes" (id., quoting Holloway at 1008). "The existence of innocent inferences arising from the evidence has no bearing upon the legal sufficiency inquiry" (id., quoting People v Castro, 202 AD3d 815 [2d Dept 2022]). 
The Court finds that the evidence adduced before the Grand Jury was legally sufficient to support all remaining counts of the indictment. The People "maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" (People v Thompson, 22 NY3d 687 [2014]; People v Mitchell, 82 NY2d 509, 515 [1993], citing People v Lancaster, 69 NY2d 20, 25 [1986]).
Moreover, the District Attorney properly instructed the Grand Jury on the relevant law (People v Tunit, 149 AD3d 1110 [2d Dept 2017], citing People v Calbud, Inc., 49 NY2d 389 [1980]). To the extent that the Defendant alleges defects in the presentation of the case to the Grand Jury, the Court finds that the presentation was not defective as a matter of law. The minutes reveal that a quorum of the grand jurors was present during the presentation of evidence and at the time that the District Attorney instructed the Grand Jury on the law. No unauthorized person within the meaning of CPL §190.25 was present at any time during the proceedings (see People v Sayavong, 83 NY2d 702 [1994]). Also, no irregularity that would impair the integrity of the Grand Jury occurred (see People v Adessa, 89 NY2d 677 [1997]; People v Huston, 88 NY2d 400 [1996]). The release of additional Grand Jury minutes beyond what has been turned over by the People pursuant to the discovery provisions of Article 245 of the Criminal Procedure Law is denied since defense counsel has failed to demonstrate any compelling need for such action and the Court is able to determine the motion without assistance (see CPL §210.30[3]). 
The Court has considered the Defendant's specific arguments regarding Attempted Murder in the Second Degree and the trespass element of the burglary charges and finds them to be without merit.
The branch of the motion seeking a Bill of Particulars and demand for discovery is granted to the extent provided by the People pursuant to CPL §200.95 and CPL §245.20.
The branch of the motion seeking to suppress physical evidence is denied. The People affirm that they are unaware of any physical evidence recovered from the Defendant or anywhere where the Defendant might have a reasonable expectation of privacy and do not seek to use any such evidence on their direct case at trial.
The branch of the motion seeking to suppress statement evidence is granted to the extent that a Huntley / Dunaway hearing shall be held prior to the trial of this indictment. 
The branch of the motion seeking to suppress identification evidence is denied. In their response, the People withdrew CPL §710.30(1)(b) notice with respect to two identifications of the Defendant made by Janis Malena Persomo Cardona, who is one of the complainants in this case. However, the Court has reviewed the submissions of the parties and sworn grand jury testimony and is satisfied that the relationship between the Defendant and complainant Cardona was not distant or fleeting. Indeed, the Defendant and complainant were married and had known each other for approximately two years prior to the events that lead to the Defendant's arrest. Any identification of the Defendant made by the complainant was confirmatory (see People v Rodriguez, 79 NY2d 445 [1992]; People v Waring, 183 AD2d 271, 274 [2d Dept 1992][The confirmatory identification exception requires a case-by-case analysis which "rests on the length [*5]and quality of prior contacts between the witness and the defendant, but always requires a relationship which is more than fleeting or distant."]).
The branch of the motion seeking a voluntariness hearing is reserved for the trial court (see Jackson v Denno, 378 US 368 [1964]; Mincey v Arizona, 437 US 385 [1978]; People v Clemons, 166 AD2d 363 [1st Dept 1990]). 
The branch of the motion seeking preclusion of unnoticed statements made by the Defendant to members of law enforcement is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed statements on their direct case (see People v O'Doherty, 70 NY2d 479 [1987]).
The branch of the motion seeking to preclude identification testimony is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed police-arranged identifications on their direct case (People v McMullin, 70 NY2d 855 [1987]). 
The branch of the motion seeking the disclosure of Defendant's prior uncharged criminal, vicious or immoral acts is granted to the extent that the People are directed to adhere to the time-period for disclosure pursuant to CPL §245.20(p). 
The branch of the motion seeking a Sandoval hearing is referred to the trial court (see People v Sandoval, 34 NY2d 371 [1974]; Luck v US, 348 F2d 763 [DC Cir 1965]; People v Ventimiglia, 52 NY2d 350 [1981]; People v Molineux, 168 NY 264 [1901]). 
The branch of the motion seeking all Brady material is granted to the extent that the Court reminds the People of their obligations under Brady v Maryland, 373 US 83 (1963).
The People are directed to make every effort to preserve Rosario material as well as all 911 calls, radio runs, sprint reports, surveillance footage, and any other recordings that are relevant to this case and make them available to the Defendant at the appropriate time as prescribed by CPL § 245.10 and CPL § 245.20(1)(g) (see People v Rosario, 9 NY2d 286 [1961]; People v Consolazio, 30 NY2d 446 [1976]).
The branch of the motion reserving the right to make further motions is granted to the extent permitted by CPL §255.20. 
This constitutes the decision and order of the Court.
Dated: January 21, 2025
Queens, New York
Michael J. Yavinsky, A.J.S.C.