People v Duran (2025 NY Slip Op 50454(U))

[*1]

People v Duran

2025 NY Slip Op 50454(U)

Decided on March 14, 2025

County Court, Westchester County

Pulver, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 14, 2025
County Court, Westchester County

The People of the State of New York

against
Eleuterio Duran, Defendant.

Indictment No. 71643-24

HON. SUSAN CACACE
Westchester County District Attorney
111 Dr. Martin Luther King Jr. Blvd.
White Plains, New York 10601
Attn: Assistant District Attorneys 
Charlotte Gudis and Stephanie Baehr
RICHARD L. FERRANTE, ESQ.
Attorney for Defendant
399 Knollwood Road, Suite 111
White Plains, New York 10603

Sheralyn Pulver, J.

By Decision and Order dated September 27, 2024, and by Trial Readiness Order dated October 1, 2024, the motion court directed, inter alia, that a Huntley hearing be conducted prior to trial in this matter. The Huntley hearing commenced before the undersigned on March 10, 2025, and continued on March 13, 2025, and March 14, 2025.
The People called one witness: Detective Javier Sarmiento ("Det. Sarmiento") of the Yonkers Police Department. Two exhibits were admitted into evidence. People's Exhibit 1 is a copy of a Miranda warnings card utilized by Det. Sarmiento, which was signed by Det. Sarmiento and by defendant. People's Exhibit 2A is a disc containing the electronically recorded interview of defendant at the Yonkers Police Department on August 11, 2023. A third exhibit, marked as People's Exhibit 2B, is a 129-page printed transcript of the recording with written translations from Spanish to English.[FN1]
 Though not admitted into evidence, the Court accepted and relied on said exhibit as an aid while the video contained on People's Exhibit 2A was played.
The defense declined to present evidence at the hearing.
The Court observed and listened to Det. Sarmiento and finds his testimony to be credible. The Court also observed and listened to the video recording of the August 11, 2023, interview with the aid of Exhibit 2B (transcript with translations). Based upon the evidence adduced at the Huntley hearing, the Court makes the following findings of fact and conclusions of law:
Findings of Fact
Det. Sarmiento has been with the Yonkers Police Department for sixteen years, five of which as a detective. Det. Sarmiento is fluent in the Spanish language and has spoken English and Spanish his entire life. In addition to his other duties as a detective, he occasionally assists members of the Yonkers Police Department when translations from Spanish to English are needed, though he is not certified as a translator.
On August 11, 2023, Det. Sarmiento was asked to assist with interviewing defendant, a Spanish speaker, who was a suspect in an investigation concerning alleged sexual misconduct involving defendant's daughter. Prior to meeting defendant in an interview room at the police station, Det. McManus, the lead detective, spoke to Det. Sarmiento and provided an overview and some details of the investigation.
Prior to the interview, defendant was seated alone in the interview room. Defendant was not handcuffed. Another individual, identified in the transcript as Det. Martinez, asked defendant if he would like anything to drink and provided him a cup of coffee. Thereafter, defendant asked for and was provided water to drink, and he was permitted to use the restroom.
Defendant was seated and waiting in the interview room when Det. Sarmiento first entered. A second detective, Det. Nicosia, was also present at the start of the interview; no other detectives were present in the room during the interview. Though Det. Nicosia does not speak Spanish, Det. Sarmiento testified that it was standard to have a second detective in the room for safety. The detectives were both wearing plainclothes. Det. Sarmiento testified that neither he nor Det. Nicosia had a firearm on them in the interview room, and at no point during the interview was a firearm displayed to defendant. Det. Sarmiento further testified that neither he nor Det. Nicosia made any promises or threats to defendant at any point.
Before starting his questioning, Det. Sarmiento administered Miranda warnings to defendant by reading verbatim from the card that is depicted in People's Exhibit 1. The Miranda warnings were printed in Spanish and were read aloud by Det. Sarmiento in Spanish. Defendant stated that he understood the rights that were read to him. Det. Sarmiento then signed and dated the Miranda card, and defendant signed it as well. Det. Sarmiento testified that at no time did defendant indicate that he did not understand the Miranda warnings. Det. Sarmiento testified that defendant appeared calm and did not appear to be under the influence of alcohol or drugs.
After reading the warnings, Det. Sarmiento asked whether defendant wanted to talk to him. Defendant answered that he did want to talk to Det. Sarmiento but also expressed concern about possibly going to jail. Defendant stated the following:
Det. Sarmiento: And having these rights in mind, do you want to talk to me?
Duran: Uh, yes. But, um . . . How do I say [it]? This interrogation, is it as if I were going to jail . . . from here? Am I going to jail?
Det. Sarmiento: [W]e have to talk to know what's going to happen. But, for now, no . . . (People's Exhibit 2B, pp. 4-5 [Spanish portions omitted]).
Shortly thereafter, defendant stated the following:
Duran: . . . So, that's why I'm scared. I wanted to know if I need an attorney to know more or less . . . how big the problem is.
Det. Sarmiento: Um-hum, so let's talk.
Duran: I mean, I'm afraid, I don't know if you understand my reason.
Det. Sarmiento: No, no, so let's talk, and if you come to a point that you don't want to talk, you let me know.
Duran: No, no, I can — I'm going to talk no matter what. Because, I mean, what's going on [is] totally a hoax.
(People's Exhibit 2B, pp. 9-10 [Spanish portions omitted]). At no point did defendant expressly state that he wished to speak to a lawyer, and he appeared determined to continue speaking to Det. Sarmiento. 

Det. Sarmiento testified that the entirety of his interview with defendant was captured on the electronic recording that is contained on People's Exhibit 2A. While the full recording is approximately three hours long, the interview itself lasted for approximately one and a half hours. The interview was conducted in Spanish. 
Conclusions of Law
I. People's CPL § 710.30 Notices
The People filed three notices of intention to offer evidence pursuant to Criminal Procedure Law ("CPL") § 710.30. Two of the notices reference unspecified oral statements made by defendant to members of the Yonkers Police Department, electronically recorded on body-worn camera, at 251 Woodlands Avenue, Yonkers, New York — one on August 8, 2023, and one on August 11, 2023. The third CPL § 710.30 notice references defendant's interview at the Yonkers Police Department on August 11, 2023. The sum and substance of this statement, per the CPL § 710.30 notice, is: "[T]he defendant admits to some sexual behavior with his daughter but denies penetrating her. He denies all contact with his sister."
At the Huntley hearing, the People advised the Court that they intend to use only the statements made during defendant's August 11, 2023, interview at the Yonkers Police Department on their case-in-chief. With respect to the other two noticed statements—those allegedly made at 251 Woodlands Avenue—the People stated that those statements would be used solely for cross-examination.
Defendant argues that the People must nevertheless prove the voluntariness of the statements even if only to be used on cross-examination. The Court agrees with defendant. Although CPL § 710.30 does not require the People to serve notice if they intend to use a statement solely for impeachment on cross-examination (see People v Rigo, 273 AD2d 258, 258 [2d Dept. 2000]; People v Rudolph, 1345 AD2d 539, 540 [2d Dept. 1987]), if notice is served and defendant then claims that the statement was involuntary, a Huntley hearing must be held (see People v Weaver, 49 NY2d 1012, 1013 [1980]; People v Bingham, 144 AD2d 682, 682 [2d Dept. 1988]). Defendant is entitled to a hearing even if the statement is used solely for [*2]impeachment on cross-examination as such a statement would be inadmissible for impeachment if shown to be involuntary (see People v Maerling, 64 NY2d 134, 140 [1984]; People v Limbu, 219 AD3d 756, 756-57 [2d Dept. 2023]; People v Clemons, 166 AD2d 363, 365 [1st Dept. 1990]). Therefore, all three of the noticed statements are subject to this hearing and are addressed below.
II. Huntley Hearing
At a Huntley hearing, the burden is on the People to prove beyond a reasonable doubt that defendant's statements to law enforcement were voluntary and made after a knowing and intelligent waiver of rights (see People v Guilford, 21 NY3d 205, 208 [2013]; People v Huntley, 15 NY2d 72, 78 [1965]). In evaluating voluntariness, the totality of the circumstances concerning the accused and the nature of the questioning must be taken into consideration (see Guilford, 21 NY3d at 208; People v Anderson, 42 NY2d 35, 38 [1977]).
The Court finds that the People have met their burden with respect to defendant's statements made to Det. Sarmiento during defendant's interview on August 11, 2023. The record demonstrates defendant knowingly, intelligently, and voluntarily waived his Miranda rights before answering questions. Det. Sarmiento read the warnings to defendant in Spanish, defendant's spoken language, and defendant indicated his understanding both verbally and by signing the Miranda card. Det. Sarmiento then asked defendant if, having his rights in mind, defendant wanted to talk to him. Although defendant's "yes" response was immediately followed by concerns about possibly going to jail, he nevertheless answered in the affirmative. Defendant appeared to understand all of Det. Sarmiento's questions and gave responsive answers.
The Court does have some concern, however, about the way Det. Sarmiento steered defendant into continuing with the questioning after defendant indicated that he wanted to know if he needed an attorney to know "how big the problem is." However, the Court finds that defendant did not invoke his right to have counsel present during questioning. The right to counsel attaches only when the suspect unequivocally invokes the right to counsel (see People v Negron, 173 AD2d 571, 571-72 [2d Dept. 1991]). Merely inquiring about whether or not to consult a lawyer does not constitute an unequivocal request such that the right to counsel attaches (see People v Hicks, 69 NY2d 969, 970 [1987]; People v Pinkney, 48 AD3d 707, 708 [2d Dept. 2008]). Here, defendant's comment about wanting to know if he needs an attorney is nothing more than such an inquiry. While Det. Sarmiento encouraged defendant to continue talking, he did tell defendant to let him know if there came a point where defendant no longer wanted to talk, and defendant stated that he is going to talk "no matter what." Under the circumstances, defendant did not unequivocally invoke his right to counsel.
Further, the evidence adduced at the hearing establishes that neither Det. Sarmiento nor Det. Nicosia threatened or intimidated defendant in any way, and neither detective made any promises in exchange for defendant's statement. The Court's observations of defendant and the two detectives in the video recording (People's Exhibit 2A) are consistent with Det. Sarmiento's description of a noncoercive interview environment. At no point did either detective raise his voice, and defendant calmly and naturally answered Det. Sarmiento's questions.
Accordingly, defendant's statements to Det. Sarmiento during the interview on August 11, 2023, were voluntarily made after a knowing, intelligent, and voluntary waiver of rights and are admissible on the People's case-in-chief at trial.
The People have not met their burden, however, with respect to the two noticed statements allegedly made at 251 Woodlands Avenue. The Huntley hearing record is devoid of any evidence concerning these two statements. As such, the voluntariness of the statements has not been proven by any standard, let alone beyond a reasonable doubt (see Guilford, 21 NY3d 208; Huntley, 15 NY2d at 78; People v Holland, 48 NY2d 861, 862 [1979]). Therefore, these statements are not admissible. The People declined to present evidence regarding these two statements, despite defendant's contention that voluntariness was still at issue. Accordingly, and in this Court's view, the People have waived their right to present further evidence on this issue (see People v Havelka, 45 NY2d 636, 643 [1978]).
The foregoing constitutes the Decision and Order of the Court.
Dated: March 14, 2025
White Plains, New York
HON. SHERALYN PULVER
County Court Judge

Footnotes

Footnote 1:The transcript is accompanied by an affidavit of the preparer that attests to the preparer's fluency in the English and Spanish languages, the preparer's training and experience as a translator, and to the completeness and accuracy of the transcription and translations.